FLORENCE H. THORNTON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6090.   Promulgated December 10, 1945.

*Charles F. Smith, Esq., Donald J. Lynn, Esq.,* and *Arthur L. Jones, C. P. A.,* for the petitioner.

*Lawrence R. Bloomenthal, Esq.,* for the respondent.

#### OPINION.

SMITH, *Judge*: This proceeding involves deficiencies in petitioner's income tax for 1940 and 1941 in the respective amounts of $14,178.55 and $28,686.30.   Petitioner has waived one of the allegations of error, thereby conceding liability for a part of the deficiency determined for 1941.   The sole remaining question for our determination is the amount of income distributable and therefore taxable to the petitioner in 1940 and 1941 from a testamentary trust created by the petitioner's father, John T. Harrington.

The parties have filed a written stipulation of facts, which we adopt as our findings of fact.   The stipulated facts may be summarized as follows:

Petitioner is a resident of Youngstown, Ohio.   She filed her income tax returns for 1940 and 1941 with the collector of internal revenue for the eighteenth district of Ohio.

John T. Harrington died February 27, 1932.   Petitioner was the only surviving child.   In his will he left his residuary estate in trust for the benefit of petitioner.   The net income of the testamentary trust was to be paid to petitioner quarter-yearly until she should attain the age of 40 years, at which time all of the remaining trust assets were to be distributed to her.   In case of her death prior to the termination of the trust, the assets were to be distributed to the petitioner's children or other heirs.   The testator named his law partner, Charles F. Smith,

as one of the two individual executors and also as cotrustee with the Chemical Bank & Trust Co. of the testamentary trust when set up. The last will and testament of Harrington contained the following pertinent provisions:

FIRST: I direct that all my just debts and funeral expenses be paid out of my estate as soon after my decease as conveniently can be done.

\* \* \* \* \* \* \*

NINTH: \* \* \*

In the administration of said trust fund, my said Trustees shall have full power to have, hold, manage, rent, invest, reinvest, sell or exchange the same, or any part thereof, from time to time and as often as they deem it necessary or advisable, having due regard to the safety of the principal and the income-producing ability thereof; may change the form of the same or any part thereof; shall collect the income therefrom; may assign, transfer and convey the same or any part thereof at public or private sale, and invest and reinvest the proceeds of sale; may determine whether money or property coming into their possession shall be treated as principal or income, and charge or apportion expenses and losses to principal or income as they may deem just and equitable, and to bind the beneficiary and distributee by their judgment therein; \* \* \* and, in general, shall have, possess and exercise as full power and control over my estate and the management of it as I could do, if living.

The testator's will was admitted to probate March 31, 1932, and the executors named therein qualified as such and took over the administration of the estate. The executors were discharged as such by the probate court in August or September, 1939.

The original indebtedness of the estate as shown by the estate tax return filed with the collector was $1,345,585.91. His estate, except for the homestead which he specifically devised to petitioner, consisted principally of shares of common stock of many different corporations. The condition of the market for such stocks at the time of the testator's death and for some time thereafter was such that a forced sale of the securities would not have produced sufficient funds to pay off the indebtedness. The executors undertook to preserve the estate, proceeding with an orderly liquidation of the liabilities, which extended the administration into September 1939, a period of over seven years. By August 1939 the indebtedness of the estate had been reduced to about $450,000, the latter amount being owed to four creditors, as follows:

| | |
|---|---:|
| Union National Bank of Youngstown | $120,000 |
| Chemical Bank & Trust Co. of New York | 250,000 |
| Mahoning National Bank of Youngstown | 55,000 |
| Harrington, Huxley & Smith | 25,000 |
| Total | 450,000 |

All of the personal property of the estate had been hypothecated as collateral security for the above debts.

On August 18, 1939, the executor, Charles F. Smith, filed an application in the Probate Court of Trumbull County, Ohio, for his appointment as trustee of the trust created by item ninth of said will, the Chemical Bank & Trust Co. of New York having previously filed in said court its written declination of trust and having been released and relieved of all liability of every kind and nature in connection with such testamentary trust. In the application for trusteeship it was stated that all of the specific legacies provided for in the testator's will had been paid and that the assets of the estate were as follows:

|  | Appraised value as of Feb. 27, 1932, and/or cost value |
|---|---|
| Cash | $2,105.95 |
| Securities: | |
|     Common stocks | 622,735.37 |
|     Preferred stocks | 102,360.40 |
|     Bonds and land trust certificates | 2,300.00 |
| Accounts receivable | 38,519.05 |

The indebtedness of the estate at the date of the application was as follows:

| | | |
|---|---|---|
| Union National Bank of Youngstown (interest paid to Aug. 15, 1939) | | $120,000.00 |
| Chemical Bank & Trust Co. of New York (interest paid to Aug. 15, 1939) | | 250,000.00 |
| Mahoning National Bank of Youngstown | | 55,000.00 |
| Collector of Internal Revenue: | | |
|     1936 income tax | $1,685.84 | |
|     1938 income tax | 2,144.05 | |
|     1939 income tax (est.) | 1,500.00 | |
| | | 5,329.89 |
| Ohio 1939 intangible tax | | 1,342.01 |
| Harrington, Huxley & Smith, balance of attorney fees allowed by probate court | | 25,000.00 |
| | | 456,671.90 |

It was further stated in the application that since testator's death up to and including July 31, 1939, the executors had received dividends and interest of $424,459.97; had paid out interest charges of $244,928.27; and had sold assets at a net profit of $46,180.96; that about 80 percent of the market value of the stocks then held by the estate was represented by stocks of only three corporations; that the demand for stocks was light and their sale at that time to pay the remaining debts of the estate would result in a substantial loss to the estate. It was proposed that the trustee assume the unpaid debts of the estate, the creditors and the beneficiary having given their approval. The probate court granted the application and appointed Smith sole trustee of the estate as of August 18, 1939. Promissory notes of the trust were

issued to the four principal creditors, as shown above, and were renewed by the trustee from time to time.

The order of the probate court appointing Smith as trustee provided in part:

It is therefore ordered, adjudged and decreed that CHARLES F. SMITH as Trustee under the last Will and Testament of John T. Harrington, deceased, be authorized, empowered and directed by this Court to assume the payment of the indebtedness due from said Estate to the creditors hereinbefore set forth and in the principal amounts set opposite their respective names * * *

It is further ordered, adjudged and decreed that the net income as directed by said testator in his last Will and Testament to be distributed in quarter-yearly periods to the beneficiary or beneficiaries therein named shall be such net income as remains after the Trustee has deducted not only his commissions for acting as Trustee and all other necessary expenses but also all interest paid or payable upon any indebtedness assumed by the Trustee in his fiduciary capacity whether the same be secured or unsecured and particularly all interest payable to The Union National Bank of Youngstown, Chemical Bank & Trust Company, New York, New York, and The Mahoning National Bank of Youngstown, their respective successors and assigns, upon the aforesaid indebtedness and upon any renewal or renewals thereof or to any other bank or trust company to which the Trustee may become indebted, including also all interest paid or payable by the Trustee on any other indebtedness of such Trust Estate.

It is further ordered, adjudged and decreed that the net income therefrom as so determined herein shall be paid to the beneficiary or beneficiaries entitled thereto as provided for in said last Will and Testament and in accordance with the terms and conditions thereof, but upon the condition that such beneficiary or beneficiaries shall return and repay not less than 10% thereof yearly to the Trustee for the purpose of liquidating an indebtedness of $32,696.81 due to said Trust Estate from Florence Harrington Thornton representing moneys borrowed by' her from the Executors of said Estate and for the purpose of furnishing funds to the Trustee with which to liquidate and discharge the indebtedness assumed by the Trustee as herein authorized, upon the condition, however, that the obligation of the beneficiary or beneficiaries to return and repay said 10% of the remaining net income to the Trustee shall terminate upon the payment in full of the aforesaid indebtedness of $32,696.81.

The debts assumed by the trustee, amounting to $456,671.90, were reduced by the trustee to the following amounts at the close of the years 1939, 1940, and 1941:

| Creditor | Dec. 31, 1939 | Dec. 31, 1940 | Dec. 31, 1941 |
|---|---|---|---|
| Union National Bank of Youngstown | $120,000.00 | $120,000.00 | $120,000.00 |
| Chemical Bank & Trust Co. of New York | 250,000.00 | 190,155.41 | 77,960.67 |
| Mahoning National Bank of Youngstown | 55,000.00 | 55,000.00 | 55,000.00 |
| Federal income tax: | | | |
| Year 1936 deficiency | | | |
| Year 1938 deficiency | 2,144.05 | 2,144.05 | 2,144.05 |
| Year 1939 (estimated) | 1,500.00 | | |
| Ohio 1939 intangible tax | | | |
| Harrington, Huxley & Smith | 25,000.00 | 17,500.00 | 7,500.00 |
| Total amount of estate indebtedness assumed | 453,644.05 | 384,799.46 | 262,604.72 |

Petitioner received no income from the estate during the period February 27, 1932, to August 29, 1939. Under the testator's will the executors were not required to make any distributions of income to her. After the close of the administration of the estate, however, and during 1940 and 1941, the trustee made distributions of income to petitioner aggregating $52,003.08 in 1940 and $49,853.11 in 1941.

The fiduciary returns filed for the trust estate by the trustee for 1940 and 1941 showed the following income and deductions, amounts distributable to the beneficiaries, and net income taxable to the fiduciary:

INCOME—1940

| | |
|---|---:|
| 1. Dividends | $98,357.78 |
| 2. Interest on bank deposits, etc | 5,064.50 |
| 7 (b). Net long term loss | (35,110.13) |
| 7 (c). Net gain from sale or exchange of property other than capital assets | 10,000.00 |
| 9. Other income | 420.74 |
| 10. Total income | 78,732.89 |

DEDUCTIONS

| | | |
|---|---:|---:|
| 11. Interest | $15,168.50 | |
| 12. Taxes | 4,404.62 | |
| 13. Other deductions | 6,745.12 | |
| 14. Total deductions | | 26,318.24 |
| 15. Balance | | 52,414.65 |
| 16. Less amount distributable to beneficiaries | | 52,003.08 |
| 17. Net income (taxable to fiduciary) | | 411.57 |

INCOME—1941

| | |
|---|---:|
| 1. Dividends | $113,516.80 |
| 7 (a). Net short term gain | 1,109.00 |
| 7 (b). Net long term loss | (43,611.13) |
| 10. Total income | 71,014.67 |

DEDUCTIONS

| | | |
|---|---:|---:|
| 11. Interest | $13,191.55 | |
| 12. Taxes | 2.82 | |
| 13. Other deductions | 6,761.46 | |
| 14. Total deductions | | $19,955.83 |
| 15. Balance | | 51,058.84 |
| 16. Less amount distributable to beneficiaries | | 49,853.11 |
| 17. Net income (taxable to fiduciary) | | 1,205.73 |

The items of net long term capital losses shown for 1940 and 1941 in the respective amounts of $35,110.13 and $43,611.13 represent 50 percent of the total net long term capital losses reported by the trust for those years.

In the determination of the deficiencies for 1940 and 1941 the respondent determined that the distributable income of the trust upon which the petitioner is liable for income tax included not only the net income of the trust reported for taxation by the fiduciary, but also that gains and losses from the sale of securities by the trustee should not be taken into acount in computing the distributable income. He accordingly increased the distributable income reported by the petitioner for 1940 in the amount of $52,003.08 to $77,524.78 and that reported for 1941 in the amount of $49,853.11 to $93,560.97. The explanation of the increase for 1940 is as follows:

Net long term loss _____ $35,110.13
Net income (taxable to fiduciary) _____ 411.57

Total _____ 35,521.70
Net gain from sale or exchange of property other than capital assets___ 10,000.00

Balance _____ 25,521.70

The computation of the increase for 1941 is as follows:

Net long term loss _____ $43,611.13
Net income (taxable to fiduciary) _____ 1,205.73

Total _____ 44,816.86
Net short term gain _____ 1,109.00

Balance _____ 43,707.86

Soon after receiving notice of the respondent's adjustments for 1940 and 1941 the trustee filed an application in the Probate Court of Trumbull County,Ohio, for a declaratory judgment defining the rights, duties, and obligations of himself as trustee, in the disbursement of the trust income from the estate for the years 1940 to 1943, inclusive, and thereafter. Petitioner was named defendant in the proceeding and was represented by counsel. Hearing was had before the probate court on May 7, 1943, and on October 27, 1943, the court entered its findings of fact and conclusions of law. The court found:

(13) That in the administration of said estate and in the exercise of the powers granted to said Trustee under decedent's Last Will and Testament it became advisable and expedient during the years 1940 and 1941 to sell and dispose of certain securities, the equity in which was held by said Trustee, at a financial loss in order to prevent a greater loss being ultimately sustained by the trust estate; that during the year 1940 the capital losses of said trust estate aggregated $70,701.72 and there was allocated by said Trustee from trust income during said year the sum of $35,350.87, so charged against income, to recoup in

part such capital losses; that during the year 1941 capital losses of said trust estate aggregated $97,143.30 and there was allocated by said Trustee from trust income during such year the sum of $48,571.65, so charged against income, to recoup in part such capital losses; that due to the unsettled, uncertain and unsatisfactory condition of the security market during 1940 and 1941 said Trustee did not consider it advisable during such years to invest the sums so allocated and charged against income and used to recoup, in part, the aforesaid capital losses, nor did said Trustee consider it advisable to permit such sums to remain idle for the purpose of awaiting better market conditions; that in each of such years it appeared to be to the best interests of said trust estate to apply said sums toward effecting a reduction of estate indebtedness and thereby reduce the interest charges thereon; that during 1940 said Trustee applied said sum of $35,350.87 in part payment of the debt due from said estate to the Chemical Bank & Trust Company of New York and to such extent reduced the outstanding liabilities of said estate; and likewise during 1941 again applied said sum of $48,571.65 in reduction of such indebtedness.

(14) That it was clearly the intention of the testator that his daughter as sole beneficiary should receive the income from said estate as early as practicable and in such amounts as could be paid to her in an orderly and fair administration of said estate and the trust created under said Last Will and Testament; that accordingly said Trustee, during the year 1940, in the exercise of his discretion and under the authority contained in said will as to the allocation of income, decided that he could make partial payments to the said Florence Harrington Thornton out of net income from said estate without jeopardizing the rights or security of the creditors whose indebtedness had been assumed by him; that thereupon said Trustee decided to, and did, allocate to the said beneficiary during 1940 the sum of $52,003.08 from the income of said estate for that year.

(15) That a similar situation existed during the year 1941 and the Trustee, for the same reasons, decided to, and did, allocate and pay to the said Florence Harrington Thornton, sole beneficiary, the sum of $49,853.11 from the income of the trust estate for such year.

The court decreed that the assumption of the unpaid debts of the estate by the testamentary trustee was valid; that in the administration of the trust the trustee had control over the income:

* * * with full power to allocate, charge, apportion and disburse the same in accordance with the terms and provisions of said trust. Such power included the right to charge or apportion expenses and losses to the principal or income of said estate as he, in his sound discretion, might deem just and equitable, and to bind the beneficiary by his judgment therein.

(4) That the charging or apportioning of trust income in the amount of $35,350.87 in 1940 to capital losses sustained during such year, and the charging or apportioning of trust income in the amount of $48,571.65 in 1941 to capital losses sustained during that year, was within the sound discretion of said Trustee, was legally binding upon the beneficiary, and did not jeopardize the rights or security of the aforementioned creditors.

(5) That the payments made to the beneficiary, Florence Harrington Thornton, from the income of the trust estate by said Trustee in the amounts of $52,003.08, $49,853.11 and $29,500.00, during the years 1940, 1941 and 1942, respectively, were a proper allocation of the income for each of said years in accordance with the powers vested in said Trustee by law, the former order of this Court and the Last Will and Testament of said decedent, and did not jeopardize the rights or security of the aforementioned creditors.

The question for our determination is the amounts of the distributable income of the testamentary trust for the calendar years 1940 and 1941. The petitioner admits that she is liable to income tax on the distributable income of the trust. She contends, however, that the amounts of the distributable income are the amounts which were paid over to her during the taxable years, namely, $52,003.08 for 1940 and $49,853.11 for 1941. These are the amounts found by the probate court in its decree entered October 27, 1943.

The respondent contends that this declaratory judgment of the probate court is not binding upon us, upon the ground that it was obtained by collusion of the parties; that in effect the decree was obtained in a nonadversary action. We do not think there is any basis for this contention. In that action the trustee was represented by counsel and the petitioner by opposing counsel. All of the facts in the case were presented to the court. The court's decision was reached after a consideration of the facts and upon the briefs of opposing counsel.

In *Estate of Frederick R. Shepherd*, 39 B. T. A. 38, we said:

\* \* \* The Board, like the Federal courts, is bound by decisions of the state courts in regard to property rights and the effect of conveyances executed within the state relating to property situated therein. The decision of a state court, until reversed or overruled, establishes the law of that state respecting the distribution of trust property within its jurisdiction and the rights of beneficiaries to that property. *Warburton* v. *White*, 176 U. S. 484; *Tyler* v. *United States*, 281 U. S. 497; *Leser* v. *Burnet*, 46 Fed. (2d) 756; *Freuler* v. *Helvering*, 291 U. S. 34; *Blair* v. *Commissioner*, 300 U. S. 5; *Sharp* v. *Commissioner*, 303 U. S. 624; *Union & Peoples National Bank of Jackson et al., Administrators*, 30 B. T. A. 1277; *Christine Smith Kendrick et al., Executrices*, 34 B. T. A. 1040. \* \* \*

Section 10501–53 of the Ohio Statutes provides, with respect to jurisdiction of the probate court, in part as follows:

The probate court shall have plenary power at law and in equity fully to dispose of any matter properly before the court, unless the power is expressly otherwise limited or denied by statute. [114 v. 335. Eff. Jan. 1, 1932.]

Section 10504–66 reads as follows:

Section 10504–66. *Action by fiduciary.*—Any fiduciary may maintain an action in the probate court or court of common pleas against the creditors, legatees, distributees or other parties, asking the direction or judgment of the court in any matter respecting the trust, estate or property to be administered, and the rights of the parties in interest, in the manner, and as fully, as formerly was entertained in courts of equity. [118 v. 78, sec. 1; 114 v. 358. Eff. June 26, 1939.]

Section 12102–1 reads as follows:

Section 12102–1. *Declaratory judgments, when granted, force and effect.*—Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be

either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree. [115 v. 495. Eff. Oct. 9, 1933.]

We think that the decree of the probate court is binding upon us.

Even without the benefit of the declaratory judgment, we would be constrained to sustain the petitioner upon the point in issue, since the trustees, by the terms of the will of the decedent, Harrington, had authority to "determine whether money or property coming into their possession shall be treated as principal or income, and charge or apportion expenses or losses to principal or income as they may deem just and equitable, and to bind the beneficiary and distributee by their judgment therein." If the trustee exercised sound discretion in allocating a part of the income of the trust for each of the taxable years against capital losses, that allocation is binding upon us. We think that he did. Since the amounts thus allocated to the capital losses in each year were in excess of the additional amounts which the respondent holds were distributable to the petitioner, those amounts are not includible in the petitioner's gross income.

The distributable income of a trust is the amount which the trustee is required by the terms of the trust indenture or by decree of court to distribute to the beneficiary—the amount which is demandable by the beneficiary. Where the beneficiary does not have the power to demand distribution of the income, it is not taxable to him or her. Cf. *Nellie S. Alexander*, 36 B. T. A. 929; *Elizabeth F. Wade*, 5 T. C. 394.

The determination of the respondent upon the point in issue is reversed.

*Decision will be entered under Rule 50.*