LESLIE H. GREEN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 1780, 2570. Promulgated June 28, 1946.

*R. M. O'Hara, Esq.*, and *Benjamin E. Jaffe, Esq.*, for the petitioner.
*Philip M. Clark, Esq.*, and *William F. Robinson, Esq.*, for the respondent.

### OPINION.

Van Fossan, *Judge*: The first question for our decision is whether the petitioner is taxable individually upon the income of the trusts created by him in 1935. In the notice of deficiency the respondent determined that the petitioner was taxable under section 22 (a) "and/ or section 167" of the Revenue Acts of 1936 and 1938 and of the Internal Revenue Code. In his brief, however, he argues the applicability only of section 22 (a) and, in view of our decision, we shall confine our discussion to that section.

The respondent contends that the issue in the instant proceedings is identical with that presented in *Ellis H. Warren*, 45 B. T. A. 379; affd., 133 Fed. (2d) 312, and that the decision in that case is dispositive of the cases before us. (Ellis H. Warren is petitioner's business associate mentioned in the findings of fact). The petitioner contends that the cases at bar are distinguishable from the *Warren* case and that, in any event, our decision must be controlled by the decree of the Circuit Court of Oakland County, Michigan, rendered in the proceedings instituted by the petitioner for a construction of the trust instruments.

In the *Warren* case, *supra*, the grantor created three trusts, one each for the benefit of his wife, daughter, and son. Each trust was declared to be irrevocable and in each the grantor was named as trustee. The powers retained by the settlor-trustee under paragraph 2 of each of the

Warren trusts were, in all respects, identical to those retained by the petitioner herein, except that in the Warren trusts, under subparagraph (h) of paragraph 2, loans to the grantor were required to be made at the market rate of interest.

Paragraph 5 of the Warren trusts was identical to paragraph 5 of the trusts herein.

The income of all three trusts in the *Warren* case was to be accumulated or distributed during their existence, in the discretion of the trustee. The trust for the benefit of Warren's wife terminated and the corpus was distributable to her as her absolute property upon the death of the grantor. As to the trusts for each child, the corpus was distributable to the beneficiary as his or her absolute property when each should attain the age of 35 years, except that if the grantor was still living the trusts were to continue until his death, at which time the beneficiary was to receive the corpus as his or her absolute property.

The Board of Tax Appeals held that Warren was taxable, as grantor, upon the income of the trusts. In its opinion the Board said, in part:

We do not think that it is material that there is no provision of the trust instruments by which either the income or the corpora of the trusts would ever revest in the petitioner. See *Commissioner* v. *Buck, supra.* The petitioner did have the right to buy and sell to the trusts property at prices to be determined by himself. In *David M. Heyman,* 44 B. T. A. 1009, such a right was held to be equal to a power of revocation. In our opinion in that case we relied upon *Chandler* v. *Commissioner* (C. C. A. 3d Cir.), 119 Fed. (2d) 623.

The simple facts here are that these trusts were created by the petitioner for the benefit of his wife and children, his heirs at law. No one outside of the family had any rights in or any control over the trusts. The mere fact that they were declared to be irrevocable is of little importance. The petitioner does not claim that he did not have the right to modify the trusts and the evidence shows that on December 9, 1940, he did modify them, although he claims that the modification was only for the protection of the beneficiaries of the trust.

In *Helvering* v. *Elias* (C. C. A., 2d Cir.), 122 Fed. (2d) 171, the court said:

> * * * the court must look to the whole nexus of relations between the settlor, the trustee and the beneficiary, and if it concludes that in spite of their changed legal relations the three continue in fact to act and feel toward each other as they did before, the income remains the settlor's; * * *

We think that the facts that obtain in the instant case are such as those stated by the court that would make the income of the trust taxable to the settlor.

After the creation of the trusts the petitioner and he alone had absolute control of the trust assets. He was not required to distribute any part of the income to any of the beneficiaries during his lifetime. He had absolute voting rights of any shares of stock which became a part of the trust estates. He had as much or greater control over the trust assets than did the taxpayer in the case of *Frank G. Hoover,* 42 B. T. A. 786, in which we said:

> * * * He does control the form and manner of the investment of both principal and undistributed income. And he does remain in a position to participate in the affairs of the business in which he is actively interested,

a prerogative which proceeds from the retained equivalent of ownership of his interest in that enterprise. This is an attribute of proprietorship frequently of greater significance than the right to receive income. * * *

The petitioner admits that the powers reserved to him in the instant cases are substantially identical to those reserved in the *Warren* case. He contends, however, that differences in the two cases with respect to the distribution of income and corpus make them distinguishable. He asserts that in the trusts in the cited case the income could be accumulated or distributed by the trustee within his discretion during the lifetime of the settlor and corpus was distributable to the beneficiary upon his attaining the age of 35 or the death of the settlor, whichever last occurred; whereas here, in the Robert N. Green trust, the corpus was required to be distributed to the beneficiary upon his attaining the age of 45, whether or not the settlor was then living, and in the Edith C. Green trust, upon her death the income was payable in stated amounts to Robert N. Green until he reached the age of 45, at which time the corpus was to be distributed to him, regardless of whether or not the settlor was then living. These differences, the petitioner contends, distinguish the present cases from the *Warren* case and bring them within the rule of *Alma M. Myer*, 6 T. C. 77, and *W. L. Taylor*, 6 T. C. 201.

We do not agree. The decision in the *Warren* case did not rest upon any single factor, but fastened upon "the whole nexus of relations between the settlor, the trustee and the beneficiary" (*Helvering* v. *Elias*, 122 Fed. (2d) 171). We do not think the provisions in the respective trusts differ so substantially as to call for opposite conclusions respecting the taxability of the income thereof.

After the creation of the trust estates and during their existence, "the petitioner and he alone had absolute control of the trust assets." He had discretionary power to accumulate or distribute the income, and if his wife or son died before the time fixed for the termination of the trusts he could deprive them of both income and corpus, although each was stated to be the primary beneficiary of the respective trusts. Cf. *Lillian R. Chertoff*, 6 T. C. 266.

In the *Myer* and *Taylor* cases, *supra*, relied upon by the petitioner, the powers retained by the settlor-trustee were substantially less than those retained in the proceedings before us. For example, in neither of those cases was the settlor-trustee specifically given the power to deal with himself as an individual with respect to the trust properties. Such differences, we think, serve to distinguish those cases from the present cases.

The power retained by the petitioner to deal with himself as an individual with respect to the trust properties added materially to the

"bundle of rights" which he possessed as trustee. Furthermore, the evidence shows that this power was freely exercised by the petitioner. At various times he borrowed money from the trusts for personal purposes and on one occasion he sold to one of the trusts a note which had been executed in his favor by his brother. Such a power, and the other broad powers retained by him as settlor-trustee, are, in our opinion, sufficient to render the petitio er taxable on the income of the trust under section 22 (a).

The petitioner contends, however, that the decree of the Michigan court requires a holding by us that he did not retain powers sufficient to warrant taxing to him the income of the trusts under section 22 (a). He relies upon *Blair* v. *Commissioner*, 300 U. S. 5; *Freuler* v. *Helvering*, 291 U. S. 35; *Eisenmenger* v. *Commissioner*, 145 Fed. (2d) 103; *Estate of Frederick R. Shepherd*, 39 B. T. A. 38; and *Florence H. Thornton*, 5 T. C. 1177. The cited cases hold that decisions of a state court settling property rights must be given full effect by a Federal court. Such rule, however, applies only to a decision rendered in a proceeding presenting a real controversy and one which settles issues regularly presented. It must not be in any sense a consent decree or a decree which is "collusive in the sense that all the parties joined in a submission of the issues and sought a decision which would adversely affect the Government's right to additional income tax." (*Freuler* v. *Helvering*, supra). See *Tatem Wofford*, 5 T. C. 1152; *Francis Doll*, 2 T. C. 276; affd., 149 Fed. (2d) 239.

An examination of the pleadings and decree in the proceedings instituted by the petitioner leads us to the conclusion that such proceedings were of the type last described. They were commenced after the filing of the petitions herein. The pleadings filed therein presented no real controversy between the parties thereto. It is apparent from the allegations in the bills of complaint quoted in our findings that the proceedings were brought solely as a result of the respondent's determination. It was an attempt to litigate in the state court the precise quesion here at issue. Although the answer purported to put plaintiff on proof of many allegations basic in the action, there is no evidence of any proof being introduced. The decree of the court is almost a verbatim copy of the prayers for relief contained in the answer. Such a proceeding is collusive in the sense in which that term is used in the *Freuler* and *Francis Doll* cases, *supra*, and the decree entered therein is not binding on us.

On the first issue, therefore, the respondent's determination is sustained.

The next question is whether or not assessment and collection of deficiencies for the years 1937 and 1938 are barred by the statute of

limitations. The applicable statutes, sections 275 (a) and 275 (c) of the Revenue Acts of 1936 and 1938, are set forth in the margin.[1]

The notice of deficiency covering the years 1937 and 1938 was mailed more than three years but less than five years after the petitioner had filed his returns for those years. In his petition the petitioner pleaded in bar the three-year period of limitations found in section 275 (a) of the applicable revenue acts. In his answer the respondent pleaded affirmatively that the controlling period of limitations is that provided for in section 275 (c).

As far as the year 1937 is concerned, we think it is clear that the respondent must be sustained. The evidence shows that the petitioner filed an individual return for that year in which he reported gross income of $272,355.14. For the same year he filed returns as trustee reporting gross income of the trusts aggregating $76,186.25, which amount was properly taxable to him as an individual and which exceeded 25 per cent of the gross income stated by him on his individual return.

The petitioner contends that section 275 (c) should not be applied because of the fact that agents of the Bureau of Internal Revenue examined his individual returns and those of the trusts for the years 1935, 1936, 1937, and 1938; that the Bureau did not propose to tax to the petitioner any portion of the trust incomes as the result of such examinations; and that the first notice received by him indicating an intention by the respondent to tax to him the income of the two trusts was contained in letters addressed to him under date of February 11, 1943.

Such an argument is unavailing in deciding the question of whether or not section 275 (c) is to be applied. As was said in *Estate of C. P. Hale*, 1 T. C. 121:

* * * [Section 275 (c)] was not intended to relieve the taxpayer whose understatement of gross income in excess of 25 percent of the amount stated in the return was due to "honest mistake" and not fraud from the payment of taxes justly due if asserted by the Commissioner within the 5-year period. The words "If the taxpayer omits from gross income" are so clear and unambiguous that no construction of them is required.

---

[1] SEC. 275. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION.

Except as provided in section 276—

(a) GENERAL RULE.—The amount of income taxes imposed by this title shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period.

\*   \*   \*   \*   \*   \*   \*

(c) OMISSION FROM GROSS INCOME.—If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed.

In the instant case the amount omitted by the petitioner exceeded 25 per cent of the amount included by him on his return for 1937 as gross income. Consequently the respondent was not barred from asserting a deficiency for that year. See also *Katherine C. Ketcham*, 2 T. C. 159; affd., 142 Fed. (2d) 996; *Oleta Ewald*, 2 T. C. 384; affd., 141 Fed. (2d) 750.

With respect to 1938, the petitioner contends that, even though the income of the trusts for that year is taxable to him as an individual, he did not omit an amount in excess of 25 per cent of the gross income stated on his return and that, therefore, the provisions of section 275 (c) are not applicable and assessment and collection of the deficiency are barred under section 275 (a).

In his return for 1938, under the heading "Income," the petitioner reported the following items:

| | |
|---|---|
| 1. Salaries and other compensation for personal services | $89,401.12 |
| 2. Dividends | 83,739.32 |
| 3. Interest on bank deposits, notes, mortgages, etc. | 3,483.55 |
| 4. Interest on corporation bonds | 875.00 |
| *    *    *    *    *    *    * | |
| 10. (a) * * * | |
| (b) Net long-term gain (or loss) from sale or exchange of capital assets (Loss) | 130,142.36 |
| *    *    *    *    *    *    * | |
| 12. Total income in items 1 to 11 | $47,356.63 |

The petitioner filed returns as trustee for the trusts for 1938 in which he reported as income from the two trusts the aggregate amount of $39,232.50.

It is the petitioner's contention that his gross income must be computed without any deduction for the long term capital loss; that when so computed his gross income was $177,498.99; that the amount omitted from his return was not in excess of 25 per cent of this sum; and that the provisions of section 275 (c) consequently can not be invoked.

The respondent contends that the petitioner's gross income as referred to in section 275 (c) was the amount shown on line 12 of the return as "Total income" and that, since the amount omitted by the petitioner was in excess of 25 per cent of this sum, the five-year period of limitations is applicable hereto. He offers nothing in support of this contention except the statement in his brief that "Item 12 of the return showing 'Total income' is the amount Congress had in mind in the compilation of section 275 (c)."

We think the petitioner's position is correct. Section 21 of the Revenue Act of 1938 defines "net income" to mean "the gross income computed under section 22, less the deductions allowed by section 23." Under section 22 (a) "gross income" is defined generally to include *gains, profits* and *income* from various specified sources, including

sales or dealings in property, whether real or personal, or derived "from any source whatever." Nothing is contained in any of the provisions of section 22 requiring an adjustment to be made in the computation of gross income on account of capital losses. Provision for deduction of such losses is found in subsection (g) of section 23, entitled "Deductions from Gross Income."

It seems clear from these provisions that capital losses form no part of the gross income, but are to be deducted from gross income in arriving at net income.

We are unimpressed by the respondent's contention that for the purposes of section 275 (c) "gross income" means the "total income" shown on line 12 of the return. "Gross income" has a well established meaning in the revenue laws, denoting statutory gross income as defined by section 22. See Minn. 2915, I–1—C. B. 233, relating to a comparable provision under the Revenue Act of 1921.

The respondent had the burden of proof with regard to this issue and, in our opinion, it has not been discharged by him. We hold, therefore, that section 275 (c) is inapplicable to 1938 and that assessment and collection of a deficiency for that year are barred by the limitation provided for in section 275 (a).

The last issue is whether or not the petitioner is entitled to offset against any deficiency determined against him for 1937 the tax paid by him as trustee on trust income for that year. The issue is raised with respect to both 1937 and 1938, but, since we have decided that assessment and collection of a deficiency against the petitioner for 1938 is barred by the statute of limitations, we shall limit our discussion to the year 1937.

It is stipulated that the returns for the trusts covering the year 1937 were filed in March 1938 and that the taxes shown to be due thereon were paid by the trusts. It is further stipulated that no portion of the taxes paid by the trusts for the year 1937 has been refunded by the respondent, nor have any claims for refund covering such taxes been filed with the respondent by the said trusts.

In *Commissioner* v. *Gooch Milling & Elevator Co.*, 320 U. S. 418, the Supreme Court held that this Court is without jurisdiction to apply any overpayment of taxes for one year against a deficiency for another year. The petitioner contends that this rule is inapplicable to the instant cases, since only one year is involved and that this Court has jurisdiction to grant the relief he seeks.

Whether or not we have jurisdiction to allow such an offset we need not decide since, for other reasons, the petitioner can not prevail. The taxes in question were paid by the petitioner as trustee of the trusts and were paid out of trust funds. Here, however, the petitioner is before us as an individual. Thus he is seeking to have taxes which he paid in one capacity offset against taxes due from him in another

capacity. The rule of equitable recoupment, however, applies only to the relief of the identical taxpayer. *Huntington National Bank* v. *Commissioner*, 90 Fed. (2d) 876. In that case the taxpayer, as trustee of one trust, sought to offset taxes paid by it as trustee of another trust. The court held that it was not entitled to such relief, for the reason just stated. See also *Edmonds* v. *Commissioner*, 90 Fed. (2d) 14, where the taxpayer, who was administrator of the estates of a husband and wife, sought unsuccessfully to offset taxes paid as administrator of the husband's estate upon income later determined to be that of his wife.

It follows that the petitioner may not offset against his individual tax liability amounts paid by him as trustee of the trusts.

*Decisions will be entered under Rule 50.*