**NEW YORK TRUST CO. v. UNITED STATES.**

United States District Court
S. D. New York.
July 14, 1953.

Willkie, Owen, Farr, Gallagher & Walton, New York City, for plaintiff (William W. Ellis, Jr., New York City, of counsel).

J. Edward Lumbard, U. S. Atty. for Southern District of New York, New York City, for defendant (James A. Devlin, Asst. U. S. Atty., New York City, of counsel).

LEIBELL, District Judge.

The plaintiff, as trustee under the will of Cortlandt F. Bishop, deceased, brings this action to recover $6,802.43, paid as income tax and interest thereon for the year 1940. After the death of Mr. Bishop on March 30, 1935, his will was admitted to probate in the Surrogate's Court, New York County, on April 25, 1935. His estate was in the hands of the three executors named in his will, Amy Bend Bishop, Edith Nixon (now Edith Nixon Falcke) and George L. Allin. Disagreements arose among the executors and they filed an intermediate account in the Surrogate's Court, New York County. Objections to the account were filed by the New York Trust Company and other interested parties. One executor was surcharged in an opinion filed by the Surrogate. A settlement was made and a decree was entered on a stipulation on July 31, 1939.

The will created a trust of the residuary estate. The three executors and the New York Trust Company were named trustees of this trust. As part of the settlement, the executors agreed not to qualify as testamentary trustees. Only the New York Trust Company so qualified, letters of trusteeship having been issued to it on April 12, 1938. The assets of the estate were turned over to the said trustee by the executors to carry out the directions contained in the Surrogate's decree and to act as sole testamentary trustee. A substantial part of the work of the executors remained unfinished and the trustee was required to complete the work ordinarily performed by executors, such as the determination and payment of State and Federal taxes and various other matters set forth in the decree. The decree contained a provision that the trustee pay the executors' commissions, calculated on the receipt and disbursement of income of the estate, while in the hands of the executors, which to the extent of about 56% or 58% was income on the property that became part of the residuary estate and thus part of the testamentary trust.[1]

The provisions of the decree in respect to the executors' commissions were as follows:—

"Ordered, adjudged and decreed that the commissions to which the Executors are entitled for receiving gross rents be, and the same hereby are, fixed and allowed in the aggregate sum of Fifteen Thousand and Five Hundred Forty One and 92/100 ($15,541.92) Dollars, and the Trustee is hereby directed to pay the same to said Amy Bend Bishop, Edith Nixon and George L. Allin, in equal one-third shares or portions, as hereinafter provided; and it is further

"Ordered, adjudged and decreed that the normal commissions to which the Executors are entitled for receiving and paying out income be, and the same hereby are, fixed in the sum of Eight Thousand Five Hundred One and 50/100 ($8,501.-50) Dollars, in the case of each Executor, or in the aggregate sum of Twenty-five Thousand Five Hundred Four and 50/100 ($25,504.50)

---

1. See paragraphs 2 and 3 of the Third Supplemental Stipulation of Facts herein, dated July 9, 1953.

Dollars, and the Trustee is hereby directed to pay the same to said Amy Bend Bishop, Edith Nixon and George L. Allin, as hereinafter provided; and it is further

"Ordered, adjudged and decreed that, in accordance with the provisions (a) of the aforesaid ·waivers and consents of Amy Bend Bishop and Edith Nixon, as trust income beneficiaries, acknowledged July 27, 1939, and (b) of the aforesaid stipulation by the parties herein, dated July 25, 1939, the Trustee be, and it hereby is, directed to pay to Amy Bend Bishop, Edith Nixon and George L. Allin, the five per cent (5%) commissions for receiving gross rents and the normal commissions for receiving and paying out income, in the respective amounts hereinabove allowed therefor, such payments to be made by said Trustee within the period of thirty (30) days from and after January 1, 1940, and to be made out of principal, to the extent that the trust income then available shall be insufficient for such purpose, subject to reimbursement by income account to principal account from future trust income for any deficiency so paid;

"And it appearing from Schedule E of said supplemental affidavit, sworn to July 14, 1939, that there exists an overdraft in income account due to payments made by the Executors out of principal in discharge of obligations properly chargeable against, and payable from, income, which overdraft amounts to the sum of Four Thousand Four Hundred Seventy-nine and 89/100 ($4,479.89) Dollars; it is further

"Ordered, adjudged and decreed that, out of the first available income coming into the hands of the Trustee, said Trustee transfer and pay over to principal account a sum sufficient to discharge the aforesaid overdraft, and the amounts paid out of principal of the said five per cent (5%) commissions for receiving gross rents and the normal commissions for receiving and paying out income, which shall have been paid as hereinabove provided".

In the calendar year 1940 the ·New York Trust Company, as testamentary trustee, paid the executors their income commissions, totalling $41,046.42, pursuant to the decree of the Surrogate's Court. During that year the trust estate had gross income of only $36,501.18. As a result it paid no income tax. The Commissioner in auditing the return of the trustee, disallowed a deduction of the $41,046.42, and on January 11, 1944, proposed a deficiency of income tax for the trust for 1940 in the sum of $5,637.50. The trustee paid the deficiency on September 5, 1944, together with interest of $1,164.93, a total of $6,802.43. A claim for a refund of that amount was filed September 3, 1946 and disallowed by the Commissioner on September 24, 1947, and this action was thereafter instituted.

The parties hereto have stipulated the facts in several stipulations of fact, one of which (undated), with certain exhibits, is annexed to the pre-trial order herein. The functions of the executors which the testamentary trustee took over and performed pursuant to the Surrogate's decree are set forth in seven sub-paragraphs (a to g) of paragraph 6 of the said stipulation. One of them (sub-paragraph g) recites the "payment of Executors' Commissions in the amount of $41,046.42", made January 30, 1940.

A Second Supplemental Stipulation of Facts, dated June 10, 1953, states:—

"1. No income commissions were paid to the executors of the estate of Cortland F. Bishop prior to the year 1940, and no deduction for income commissions was taken by said executors on the income tax returns filed for the estate for the years 1935 through 1939. The executors' final return was filed for the year 1939.

"2. No deduction was taken on the Federal Estate Tax return of

the estate of Cortlandt F. Bishop for income commissions paid to the Executors.

"3. The income tax returns for both the estate of Cortlandt F. Bishop and the testamentary trust created under his Will were prepared and filed on the cash receipts and disbursements basis."

The plaintiff trustee contends that it was entitled to deduct from the income of the trust for 1940, the income commissions paid to the three executors pursuant to the Surrogate's decree, because plaintiff was in fact continuing the administration of decedent's estate. The developments in the administration of the decedent's estate were not such as are ordinarily experienced. Executors, when their accounts are settled by a court decree, are usually authorized to pay themselves their commissions. In the Bishop estate, because of the disagreements of the executors, their conflicting rights as legatees and beneficiaries under the will, and the nature of the assets which were unique (Mr. Bishop was an art collector and a book collector and he had a large interest in a prominent Art Gallery), the administration of the estate was delayed. Indeed the testator recognized this possibility in the twenty-second paragraph of his will which provided:—

"Twenty-second: Owing to the fact that so much of my estate may be represented by books, etchings, manuscripts, engravings, pictures, carpets, furniture, household goods, silverware, goldware, china, glass, works of art and other similar articles, I will and direct that my Executrices and Executor shall not be required to settle my estate or to pay any legacy hereunder, except the legacy contained in article 'second' to my wife, Amy Bend Bishop, and to my friend, Edith Nixon, until the expiration of five (5) years after the appointment of my Executrices and Executor. I rely upon my Executrices and Executor settling the estate as soon as practicable and convenient, with a view to the best interests of my estate, and, if it can be settled within a shorter time, I trust my Executrices and Executor so to do."

Further, the income of the property in the hands of the trustee in 1940, from which the commissions paid to the executors were deducted in the trustee's income tax return, was income from more than half[2] of the same property that had been held and managed by the executors and later turned over to the trustee under the Surrogate's decree. The executors had earned their income commissions while managing the property during the time they were in charge.

Executors under New York law may not pay themselves commissions as they administer the decedent's estate. They are required to file their accounting and have their commissions determined and allowed by the Surrogate. New York Surrogate's Court Act, § 285. Beard v. Beard, 140 N.Y. 260, 265, 35 N.E. 488. Commissions on income are chargeable only against income. Lewis v. Bowers, D.C., 19 F.Supp. 745. If this had been an ordinary administration, the decree of the Surrogate would not have required the trustee to pay the executors' commissions. And under Federal law the executors may not, when they pay out the commissions, apportion the commissions over the years during which they served as executors (as an expense of producing and collecting the income) in filing the income tax returns of the estate. The executors' commissions may be deducted in their entirety as an expense for the year in which they are paid, in calculating the Federal income tax of the estate for that year, if the returns are based on a cash receipts and disbursement basis, as was the case here. I.T. 3736, 1945 C.B. 102.

Where the two fiduciaries are different, the one making the payment of the

---

2. About 58% of the income from real estate and 56% of the total income.

tax and the one claiming the refund, it has been held that there is not that identity present which permits of the application of the doctrine of recoupment. Green v. Commissioner, 7 T.C. 263, 277. But here the identity is the same. It is the trustee of the testamentary trust who has paid the executors' commissions and has paid the tax assessed and is also seeking the refund.

Finally, this obligation of the trustee was created by a decree of the Surrogate's Court and under the decree it was made chargeable against the income coming into the hands of the trustee. It is the duty of the Federal courts to give effect to the decree as far as it may equitably do so. The decree was designed to meet the special circumstances developed on the executors' accounting and the objections thereto. It was duly entered and its provisions were in accord with New York law. It was binding on the trustee and it is, I believe, binding also upon the Commissioner of Internal Revenue, Lewis v. Bowers, supra, to the extent hereinafter indicated.

█ Both the equities and the law support the major part of the plaintiff's claim herein. Unless we are to look at the label and not at the transaction itself, unless we are to consider the form and not the substance in passing on the plaintiff's claim herein, the plaintiff is entitled to a judgment. Plaintiff was continuing the administration of the decedent's estate and was in effect a successor executor or an administrator c. t. a., when it paid the commissions to the executors pursuant to the Surrogate's decree. Defendant's objection seems to come down to this, that if the plaintiff Trust Company had been judicially appointed as successor executor or administrator there would be some merit to the plaintiff's contention, but that since the court directed the plaintiff Trust Company to make the payment as trustee of the testamentary trust, the difference in the title of the payer would make a difference in the deductibility of the sum paid. In my opinion the deduction of the amount paid the executors by the plaintiff pursuant to the decree of the Surrogate was, under Section 23(a) (2) and Section 162 of the Internal Revenue Code, 26 U.S.C.A., a proper deduction from the income of the testamentary trust for the year in which the payment was made, to the extent that the commissions paid were commissions on the income of property turned over to the trustee by the executors.

It appears from the Third Supplemental Stipulation of Facts herein (dated July 9, 1953) that the real estate "Trust Assets", i. e., the real estate assets which were turned over to the testamentary trustee, produced 58.3% of the real estate income while in the hands of the executors on which the executors' real estate income commissions were calculated and fixed at $15,541.92. Of that figure, 58.3% would be the sum of $9,060.93 and would represent the amount of the executors' commissions attributable to income produced by real estate assets turned over to the testamentary trustee.

The executors' commissions for receiving and paying out income were fixed by the Surrogate at $25,504.50. Of that amount, 56.7% would be $14,461.05 and would represent the amount of the executors' commissions attributable to income of assets of the estate turned over by the executors to the testamentary trustee.

I have concluded therefore that the trustee is entitled to deduct $23,521.98 (the sum of $9,060.93 and $14,461.05) from gross income of the trust for 1940, as income commissions paid to the executors, in calculating the taxable income of the trust for that year. I have asked counsel to assume that $23,521.98 as the proper deduction, and to calculate the trust's income tax for the year 1940. They agree that on that assumption the computation of the tax for 1940 would show that the trustee should have paid an income tax of only $185.98 for that year. The Commissioner calculated the trustee's 1940 tax at $5,637.50. The trustee is entitled to a refund of $5,451.-

52, the difference between the $5,637.50 assessed and the $185.98 due, plus $1,-126.49 of interest paid thereon to September 5, 1944, the date the trustee paid the additional assessment. Further, the trustee is entitled to the statutory interest on that total of $6,578.01 (the $5,-451.52 plus the $1,126.49), from September 5, 1944, to the date of the entry of the judgment on this decision.

Submit a judgment accordingly.