H. A. HURLEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

H. A. AND OPAL HURLEY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 41210, 41211. Filed September 24, 1954.

*Percy C. Young, Esq.,* for the petitioners.
*Frederick T. Carney, Esq.,* for the respondent.

OPINION.

JOHNSON, *Judge:* Petitioner concedes on brief that if books of account do not adequately reflect income, the respondent may avail himself of the net worth method, the one used by him here, to determine net income. Discussion of the point by petitioner on brief infers that the respondent was under a duty to reconstruct the books in his audit of the returns, regardless of the time it would take and the difficulty of the task. Liability for income tax is a matter of self-assessment by the filing of a return. To facilitate an examination

of the return to test its accuracy, the statute requires the maintenance of records sufficient to clearly reflect the income subject to tax, and in the absence of adequate records for that purpose, the Commissioner is authorized to compute the income by another method.

In examining returns for accuracy, respondent is required to do no more than ascertain, as an administrative officer, whether the books and other records made available to him clearly reflect income, and if they do not, he has a statutory right to determine net income by another method without exhausting all available means of adjusting the books to clearly reflect income. *Morris Lipsitz*, 21 T. C. 917.

Although petitioner had books of account and had a bookkeeper at all times to maintain them, lack of entries for numerous financial transactions, absence of supporting data, and other facts set forth in our findings fully support the conclusion of respondent that petitioner's books and records were inadequate to reflect income. Moreover, since the net worth method is not a system of accounting at all, see *Morris Lipsitz, supra*, and *Michael Potson*, 22 T. C. 912, a substantial increase in net worth which is not accounted for may itself be evidence that the books were not accurately kept and thus provide the justification for use of the net worth method in determining net income. Accordingly, the Commissioner was justified in resorting to the net worth method and his action in that regard is sustained.

The deficiencies were determined on the basis of increased net worth each year, plus personal expenses, with adjustments, none of which is in controversy, to arrive at net income. Revisions in the statement before trial resulted in an increase of $2,205.74 in the opening net worth and $8,467.76 in the closing schedule and an increase each year of personal expenses. The effect of the new net worth statement, which was submitted in evidence as Exhibit E, was to decrease net income by $11,456.94 in 1946 and $14,146.03 in 1949, and increase it by $17,236.51 in 1947 and $24,302.42 in 1948. On account of the additional net income for 1947 and 1948 respondent is claiming increased deficiencies and penalties for those years.

The revised net worth statement was prepared from the books of the Company, as corrected, and also includes amounts for assets and liabilities not appearing on books. The parties stipulated that the amounts shown in the statement for each item of each year, including 1945, are correct with the exception of (1) accounts and notes receivable, "Accounts Payable," and "Reserve for Customers' Deposits," as to which petitioner agrees that the amounts are shown on his books and records but does not agree that they are correctly shown, and (2) amount of cash the Company had on hand at the close of each taxable year, as to which petitioner does not agree that the items are shown on his books and records or that the amounts are correct. Except for

living expenses, which we have found from the evidence to have been $6,000 each year, the parties stipulated that the amount used in Exhibit E for personal expenses is correct. The burden of proof respecting the other amounts not settled by stipulation was on petitioner with respect to the amounts in the deficiency notices, and on respondent with respect to the increased deficiencies claimed for 1947 and 1948.

The increase of $2,205.74 made by the respondent operates in favor of petitioner to that extent. Petitioner not only adopted the figures in his preparation of comparative balance sheets for 1945 and 1946, which were introduced in evidence as his Exhibit 6, but has not shown that he is entitled to a greater amount. The remaining items in controversy will be resolved in the order in which they appear in Exhibit E.

### Cash on Hand.

Except for $350 in 1949, the original net worth statement did not list cash on hand at the close of the taxable years. Exhibit E lists $1,731.08 at the close of 1946, $50 at the close of 1947 and 1948, and no change of the amount in 1949. Petitioner's Exhibit 6 discloses cash on hand of $5,586.41 at the close of 1946 and he offered no proof that the figure for 1949 is wrong. The respondent offered no proof that his figures for 1947 and 1948 are correct, in view of which the amounts will be eliminated from the statement. The figures for 1946 and 1949 will not be changed.

### Accounts and Notes Receivable (on Books).

Exhibit E contains the following changes in the accounts:

| | Accounts receivable | | Notes receivable | |
|---|---|---|---|---|
| | Increase | Decrease | Increase | Decrease |
| 1946 | $26,531.70 | | No change | |
| 1947 | 19,430.16 | | $1,837.84 | |
| 1948 | 17,280.16 | | 1,837.84 | |
| 1949 | | $2,150.00 | 1,837.84 | |

Petitioner stipulated with respondent that the figures were obtained from his books and records. The book figures are a sufficient showing of the value of the assets to shift the burden of going forward to petitioner. *B. F. Edwards*, 39 B. T. A. 735; *L. Glenn Switzer*, 20 T. C. 759; *Bessemer Limestone & Cement Co.*, 22 T. C. 303. The books of petitioner were at the hearing but he did not use them in an effort to establish that the respondent's figures are wrong.

The total amount determined by respondent in Exhibit E for the two accounts at the close of 1946 was $117,465.24. Petitioner's Ex-

hibit 6 lists a total of $103,780.03 for the accounts, including $19,430.16 for "Claims Rec." and $7,101.54 for "Vol. Disc." He thus indirectly admits the correctness of respondent's original determination and about one-half of the increase in amount made in Exhibit E.

Petitioner contends that it would be unreasonable to accept the book figures without adjustment for losses and defective material. No amount is claimed for that purpose and we find no evidence that would warrant a reduction of the book figures. Accordingly, we find no error in the figures shown in Exhibit E.

### Accounts Payable.

The use by petitioner in Exhibit 6 of the book figures adopted by respondent in Exhibit E discloses agreement as to the years 1945 and 1946. The figures for the remaining taxable years were taken from the Company's books and records and for each of the years 1947 and 1948 are greater than the amounts used in the net worth statement forming the basis of the deficiencies. No change was made in 1949. Under the increased net worth method employed to compute taxable net income, "Accounts Payable," a liability, is used as a deduction from assets on hand at the close of the year, and as a consequence the amounts used by respondent had the effect of reducing net worth. No evidence appears in the record showing accounts payable in excess of the amounts allowed by respondent.

### Reserve for Customers' Deposits.

This is a liability account and is listed in both of the net worth statements in only 1947 in the amount of $5,561.55. Petitioner offered no evidence to show that his book figure is incorrect and does not discuss the item on brief. In the absence of any evidence of error, the respondent's action will not be disturbed.

### Notes Receivable (Not on Books).

The schedule forming the basis of the deficiencies listed notes receivable not appearing on books of $4,600 in 1947, $4,250 in 1948, and $3,750 in 1949. Exhibit E contains $4,745 for 1945 and $2,900 for 1946 in addition to the amounts already found for subsequent years. Exhibits 6 and E are in agreement on the amount for 1945. The figure used by the respondent for that year and each of the other years was supplied by the daughter of petitioner, who was employed by the Company. No evidence was submitted to establish that the figures so supplied are incorrect. Accordingly, respondent's determinations as to these items will not be disturbed.

The difference between the parties under the statute of limitations issue in 1947 is whether there was an omission of in excess of 25 per cent of gross income in the return within the meaning of section 275 (c), Internal Revenue Code of 1939.[1]

To obtain the benefit of the additional time allowed by section 275 (c) within which to make an assessment, respondent had the burden of proving an omission from gross income of "an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return." The meaning of gross income in section 275 (c) does not differ from the definition of the term in section 22 (a). *Leslie H. Green*, 7 T. C. 263, 277.

Petitioner reported gross income of $84,956.28 in his return for 1947, one-fourth of which is $21,239.07. Respondent contends that petitioner had gross income of $125,324.69, or $40,368.41 in excess of the amount shown in the return. He arrived at the alleged amount of gross income by adding to the amount shown in the return the understatement of net income, as computed in his Exhibit E. Respondent's adoption of net income for gross income is based upon a theory that since petitioner failed to report net income in excess of 25 per cent of gross income shown in the return "it follows that petitioner must also have omitted *gross* income in an equal or greater amount." There is no discussion of the theory by respondent in his brief.

The theory thus advanced by respondent indirectly asks us to assume that proof of net income in excess of the amount shown in the return establishes, without more, a corresponding omission of gross income. In other words, he, in effect, asserts that a showing of net income by the net worth method satisfies the statutory provision requiring proof of omission of gross income to make it operative. Consideration of the point relied upon by respondent demonstrates its weakness.

Ordinarily net income is computed by subtracting statutory deductions from gross income based upon books of account or other records. Where no records are maintained or the data is inadequate to clearly reflect income, the Commissioner may select such other methods to compute net income as in his opinion will reflect income. The increased net worth cash expenditure method was used here.

We have said that the method employed by respondent "is a method of reconstructing income rather than a method of computing it."

---

[1] SEC. 275. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION.

(c) OMISSION FROM GROSS INCOME.—If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed.

*Thomas A. Talley*, 20 T. C. 715. It is an indirect method of arriving at unreported net income and ignores factors used when applying the statutory provision. Its theory, in general, is to treat as net income the increase in net worth during the year, based on cost, less nontaxable amounts, plus nondeductible expenditures. The method does not require identification of items of gross income or all of the statutory deductions in arriving at the result. Such gross income and allowable deductions as a taxpayer had during the taxable year are reflected in the various items of assets and liabilities that are used in the computation made to arrive at a net figure, subject to tax.

A computation by the net worth method could result in increased net income by reason of deductions having no factual basis. The probability that some part of the increased net income here is attributable to that factor is apparent not only from the nature of petitioner's business but the large amounts he claimed for deductions in computing net income. The theory advanced by respondent ignores that probability completely and requires an inference, lacking a reasonable basis, that all of the additional net income resulted from omissions of gross income.

The facts show an omission from the return of about $3,700 for gain realized from sales of trucks and automobiles. Whether respondent had knowledge of other sources of income not disclosed in the return is not known, or suggested on brief, and no contention is made that the net worth method was the only means available as proof of omissions of gross income.

We must decide the issue on the basis of the evidence in the record. Except for the amount of $3,700, there is nothing in the evidence that can be identified as gross income omitted from the return. To sustain the respondent's contention would require an assumption as a substitute for direct evidence that is not warranted by the facts in this case. Accordingly, we sustain the petitioner on this issue by reason of respondent's failure to prove an omission of gross income in the return sufficient to give him the benefit of section 275 (c).

The tax of $3,797.20 reported in petitioner's return for 1946 is based upon adjusted gross income of $17,358.48. He now asserts that his adjusted gross income was only $3,759.75, with no tax liability after exemptions and other deductions therefrom. The principal adjustment made in arriving at the decreased figure was a reduction of business profit from about $15,000 to a loss of about $3,050.

The result of the adjustments is shown in figures set forth in Form 1040 without any explanatory evidence to test the accuracy of the accountant's conclusions. Moreover, we regard as more clearly reflecting the income of petitioner the net worth schedule prepared by respondent, which establishes, as already decided, a deficiency in tax

instead of an overpayment. Accordingly, there is no ground for concluding that petitioner overpaid his tax for 1946, as alleged.

The remaining question is whether any part of the deficiencies in 1946, 1948, and 1949 is due to negligence or intentional disregard of rules and regulations within the meaning of section 293 (a), as determined by the respondent. Ample evidence appears in the record to support the determinations.

Such books and records as were kept by petitioner for the Company were inadequate to reflect his income. No complete records were kept from which to compute income from farm operations, and except for 1948 and 1949, the farming activities were not reported in returns. Numerous sales of automobiles and trucks were made without reflecting the transactions on books of account. A bank account was kept in petitioner's name and used for dealings of the Company without being reflected on the books maintained for its operations. The inadequacy of the books of the Company for income tax computing purposes is otherwise shown by the effort made by accountants to adjust them for an adequate reflection of income. The fact that petitioner had a number of bookkeepers cannot be used as a shield for the effect of these conditions. The evidence fully supports the imposition of the penalties.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

---

RAUM, *J.*, dissenting: I do not agree that the Commissioner has failed to show an omission from gross income of an amount in excess of 25 per cent of the amount stated in the return. The net worth method, approved by the Court, shows an increase in net income of about 50 per cent of the amount of gross income in the return. Although it is true that the increase may theoretically be explained as attributable to excessive deductions taken on the return, I think the Commissioner has made out a prima facie case. The total deductions on the return amounted to $65,432.57, whereas total receipts were shown as $663,270.71 and cost of goods sold as $582,757.21. There was obviously far more room for manipulation in these latter two figures, which are ingredients of gross income, than in the first figure, which plays no part in gross income. The effect of the majority opinion is to require the Commissioner to prove conclusively that the increase in net income was not attributable to excessive deductions. However, the very circumstances that make necessary the use of the net worth method would render impossible such a showing. The result of the decision is that the Commissioner is faced with a more difficult burden of proof here than in the more serious net worth cases

where fraud is asserted, and where, upon the proof of fraud, no period of limitations at all is applicable. I cannot believe that Congress desired to impose greater burdens upon the Commissioner when he seeks to enlarge the 3-year period to 5 years than when he seeks the advantage of no period of limitations whatever. Here, the Commissioner has shown an understatement of net income in an amount of about 50 per cent of gross income, and it is difficult for me to see why he has not made out a prima facie showing, in the circumstances of this case, that there has been an omission of at least 25 per cent of gross income reported on the return. The burden of going forward, after such prima facie showing, should be on the petitioner. The decision of the majority emasculates section 275 (c) in net worth cases. I cannot believe that Congress intended any such result.

BRUCE, *J.*, agrees with this dissent.

---

FISHER, *J.*, dissenting: I dissent with respect to that portion of the Opinion which relates to the application of the statute of limitations.