William E. Josey, Jr., and Madge C. Josey v. Commissioner. William E. Josey, Jr. v. Commissioner.
Josey v. Commissioner
Docket Nos. 50971, 50972.
United States Tax Court
T.C. Memo 1956-153; 1956 Tax Ct. Memo LEXIS 135; 15 T.C.M. (CCH) 758; T.C.M. (RIA) 56153; June 29, 1956
*135 From 1943 to 1949, inclusive, petitioner operated a farm, a general store, an oil and gas distributorship, and a fertilizer business in a small Georgia community. During 1948 and 1949, he also operated a Pontiac automobile dealership. Petitioner kept inadequate books and records for all of his businesses. By use of the net worth method, the respondent determined that petitioner received amounts of income greatly in excess of that reported on his returns during each of the years in issue. Held, deficiencies found for the years 1945, 1947, and 1948; no deficiency found for 1949. Held, further, no part of the deficiencies for any of the years in issue was due to fraud with intent to evade tax, and the statute of limitation is a bar to the assessment and collection of the deficiencies determined by respondent for the years 1943, 1944, and 1946. Held, further, respondent properly determined an addition to tax for substantial underestimate of estimated tax under section 294(d)(2) for 1948. L. Eugene McNatt, Esq., Citizens & Southern Bank Building, Atlanta, Ga., for the petitioners. James R. Harper, Jr., Esq., and Raymond Whiteaker, Esq., for the respondent. JOHNSON *136 Memorandum Findings of Fact and Opinion JOHNSON, Judge: These proceedings involve the following deficiencies and additions to tax: Additions to Tax under
Year
Kind of Tax
Deficiency
Sec. 293(b)
Sec. 291(a)
Sec. 294(d)(2)
1943
Income and Victory
$ 5,704.78
$ 2,852.39
1944
Income
1,552.50
776.25
$ 31.47
1945
Income
4,860.19
2,430.10
$1,215.05
227.86
1946
Income
22,819.19
11,409.60
1,517.78
1947
Income
5,233.48
2,616.74
227.43
1948
Income
3,740.30
1,870.15
214.64
1949
Income
1,337.66
668.83
70.48
The issues are: (1) Whether the respondent's use of the net worth method in the determination of petitioner's income and the amounts so determined by such method were correct; (2) whether a part of the deficiencies for each of the years in issue was due to fraud with intent to evade tax; and, if not (3) whether assessment and collection of the deficiencies for the years 1943, 1944, and 1946 are barred by the statute of limitation; and (4) whether the respondent erred in imposing a penalty under section 294(d)(2) for the petitioner's substantial underestimate of estimated tax for 1946, 1948, and 1949. *137 Concessions were made with respect to other issues which will be taken into account under a Rule 50 computation. Subsequent to the hearing, the respondent entered motions, which we granted, to increase the deficiencies because of changes in the net worth computation which might be made as a result of evidence offered at the hearing. Some of the facts were stipulated. Findings of Fact The stipulated facts are so found and are incorporated herein by this reference. William E. Josey, Jr., (hereinafter referred to as petitioner) and his wife, Madge C. Josey, were residents of Bartow, Georgia, during the years in issue. Petitioner filed individual income tax returns for the years 1943, 1944, 1946, and 1947, and he and his wife filed joint returns for the years 1948 and 1949. All such returns were filed with the collector of internal revenue for the district of Georgia. Petitioner filed no return for the year 1945. During all of the years in issue, petitioner was engaged in farming approximately 2,000 acres of land, in the operation of a general store, an oil and gasoline distributorship, and a fertilizer business. During 1948 and 1949, he was a partner and later the sole owner *138 of a Pontiac automobile agency. Petitioner has always been a highly respected citizen of his community. Petitioner and his wife had three children - William E. Josey, III, John S. Josey, and Jackie Josey. In 1943, William E. Josey, III, was 26 years old and a student at Duke University. In 1944 he was called into the Navy for a period of 2 years. In 1946 upon his return from the Navy, he resumed his education at Duke University; he finished medical school at the University of Augusta in 1953. William E. Josey, III, was claimed as a dependent on his father's returns for each of the years 1943, 1946, and 1947. In 1943, John S. Josey was 16 years old and Jackie Josey was 10 years old. John was in medical college until May of 1952. Jackie Josey entered Agnes Scott College in 1950; she graduated in 1954. Except for the taxable year 1945, for which the petitioners filed no income tax return, John S. Josey and Jackie Josey were claimed as dependents on their father's income tax returns for all of the years from 1943 to 1949, inclusive. The respondent determined the deficiencies in issue by use of the net worth method. Such method was resorted to because petitioner did not maintain adequate *139 books and records for all phases of his business activities. He maintained no inventory records for any of his businesses and, in computing the amount of inventories during the years in issue, the respondent relied primarily on such information as was disclosed by petitioner in his income tax returns. Petitioner admittedly failed to report rent received in 2 years, and his accountant erroneously reported a lesser gain than actually realized on timber sales in another year. Such books and records as petitioner maintained agreed substantially with the amounts of income which he reported on his income tax returns. The respondent's computation of income for each of the years in issue by use of the net worth method indicated that petitioner had received substantial amounts of income not shown on his books or reported on his returns. Petitioner employed a bookkeeper in 1943 and 1944. From 1945 throughout the remaining years in issue, petitioner's books were kept by his widowed sister-in-law who was not an experienced bookkeeper and who knew little about the preparation or filing of income tax returns. When petitioner gave her his return for 1945, she mistakenly filed it instead of mailing *140 it to the collector. Petitioner and his wife and family made their home with this sister-in-law. Petitioner's father died in 1938. Petitioner received United States Treasury Bonds in the amount of $3,600 from his father's estate. He also received $18,000 of cash from the estate. He had received a $5,000 gift from a brother in 1936. The town of Bartow had no bank during the years in issue, and petitioner, in the operation of his general store, maintained a valult and safe and performed such banking services for his customers as the cashing of checks and also provided his own checks in exchange for cash when customers desired to mail a check in payment of bills when they, themselves, did not maintain checking accounts in some bank. In performing such functions, petitioner maintained a supply of cash in the store at all times. Since 1922, petitioner had buried sums of cash beneath a concrete block in the floor of the vault of the general store. In addition to the cash which was used regularly in the business, petitioner, on December 31, 1942, had not less than $26,400 of cash buried beneath the floor of the vault. Such cash was expended by him in the acquisition of assets during *141 the years in issue. For many years prior to those in issue, petitioner had been a member of the county school board. During the depression, the State of Georgia was unable to pay its school employees promptly and, therefore, issued warrants to them on which they were able to secure credit at various stores. For the school employees of his county, however, petitioner advanced cash in the full amount of the warrants received by the employees and charged them no interest for such financing. He also often made loans to others. On December 31, 1942, he held outstanding notes from borrowers of not less than $15,000 and United States Treasury Bonds in the amount of $3,600. Such notes were repaid by the borrowers during the years in issue and petitioner expended the repayments in the acquisition of assets during such years. In 1944, petitioner sold cotton which he owned jointly with one J. W. Futral. Such cotton was sold prior to the end of the year and was not in petitioner's inventory at the end of the year. Payment to Futral of his share of the proceeds, in the amount of $1,282.54, was not made until 1945. The respondent conceded, on brief, that his net worth computation should include *142 an outstanding liability to the Commodity Credit Corporation in the amount of $20,998.93 at the end of 1946. The net worth computation included accounts receivable due petitioner in his fertilizer business at the end of 1949 only. Petitioner had outstanding accounts receivable in such business on December 31, 1942, and at the end of every other year in issue, which remained relatively constant throughout the entire period. Respondent conceded, on brief, that petitioner owed an outstanding liability to the Bank of Wadley, Georgia, at the end of 1946 in the amount of $19,258.17. On December 31, 1949, petitioner held secured warranty deeds as follows: J. H. Brett
$1,799.46
Lena F. Thomas
926.03
Malanie Swinney
694.56
Lena F. Thomas
156.50 The deeds from J. H. Brett, Malanie Swinney, and the deed in the amount of $926.03 from Lena F. Thomas were received by petitioner as security for advances which he made to such persons in 1950, and were not outstanding loans owed to him at the end of 1949. The deed from Lena F. Thomas, in the amount of $156.50, was given in April 1949 and the loan secured by such deed was paid prior to the end of the year, and was not an *143 outstanding amount owing to petitioner on December 31, 1949. Petitioner paid the living expenses of his family, contributed to charity, and had tax withheld from his wages in the following total amounts during the years in issue: Year
Amount
1943
$ 6,782.06
1944
7,441.42
1945
5,147.75
1946
8,099.16
1947
8,333.75
1948
10,363.24
1949
9,421.76
Set forth below are the amounts of net income which petitioner reported on his returns during the years in issue and the amounts of net income which we find he received: Amount
Amount
Year
Reported
Received
1943
$ 4,895.02
$11,550.67
1944
1,566.84
1,805.21
1945
1,887.37
1946
12,404.62
16,824.56
1947
9,429.93
37,579.49
1948
9,544.22
14,523.85
1949
(6,956.34) Petitioner made the following payments of estimated tax and reported the following total tax liability on his returns for the years indicated: Payments of
Total Tax
Year
Estimated Tax
Reported
1947
$1,557.03
1948
$1,442.97
1,279.92
Petitioner cooperated fully with the revenue agents during the course of their investigation. He supplied all of his available books and records and *144 gave the agents other information with reference to his income and net worth during the years in issue. No part of the deficiencies for any of the years in issue was due to fraud with intent to evade tax. Opinion This is one of the most deplorable records from which we have ever had to find facts or draw conclusions. The respondent's net worth computation of petitioner's income was in a constant state of flux from the time the revenue agent made his first report until the reply brief was filed. The petitioner, on the other hand, has labored under the erroneous assumption that the respondent had the burden of proving his determination of deficiencies to be correct. As a consequence of that mistaken assumption, he failed to offer sufficient evidence, except in a few instances, to rebut the respondent's determination. He relied primarily on his own self-serving testimony and failed to offer corroborating testimony and documentary evidence in many instances where it would seem that it would have been easy for him to have done so. Accordingly, we found that petitioner received income in every year, except 1949, in excess of that which he reported. The respondent, however, failed *145 to offer clear and convincing evidence that such understatements were due to petitioner's fraud with intent to evade tax. He offered no evidence, except the understatements themselves, of any conduct by petitioner which would even suggest a willful intent to defraud. While it may seem anomalous to find substantial understatements of income during successive years but to say that such understatements were not due to fraud, we can come to no other conclusion on the grossly inadequate record before us. Thus, the parties must be left approximately where we found them - the petitioner, for the most part, having failed to carry his burden of rebutting the prima facie correctness of the respondent's determination and the respondent having failed to carry his burden of proving fraudulent intent. To so decide a case on the failure of the parties to carry their respective burdens is not to say that the Court is indifferent to the results reached or that it would not turn its hand in the interest of justice where it could properly aid one party or the other. The fact is, however, that it is the parties, themselves, who must present and prove their case; and here, they have largely failed to do *146 so. Since we found that no part of the deficiencies for any of the years in issue was due to fraud, the statute of limitation is a bar to the assessment and collection of the deficiencies for the years 1943, 1944, and 1946. With regard to the latter year, the respondent conceded that section 275(c) was not applicable, citing H. A. Hurley, 22 T.C. 1256 (1954), affd. 233 Fed. (2d) 177 (C.A. 6, April 9, 1956). The respondent determined additions to tax under section 294(d)(2) for substantial underestimates of estimated tax for 1946, 1948, and 1949. Since the statute of limitation has run for the year 1946, and since we found no deficiency for 1949, the additions determined for those years are in error. We found that petitioner's income in 1948 was $14,523.85. He reported income of $9,429.93 in 1947, and $9,544.22 in 1948. He reported a total tax liability of $1,557.03 in 1947 and paid $1,442.97 on declaration of estimated tax for 1948. Clearly, the respondent was correct in imposing the additions to tax for that year. Decisions will be entered under Rule 50.