Mack Scott, Marietta Scott v. Commissioner.
Scott v. Commissioner
Docket No. 50276.
United States Tax Court
T.C. Memo 1956-220; 1956 Tax Ct. Memo LEXIS 76; 15 T.C.M. (CCH) 1156; T.C.M. (RIA) 56220; September 27, 1956
John Justin McCarthy, Esq., Finance Building, Philadelphia, Pa., for the petitioners. George H. Bowers, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: This proceeding involves deficiencies in income tax and additions thereto as follows: Additions to tax under
Sec. 294
Year
Deficiency
Sec. 293(b)
(d)(2)
1947
$4,807.60
$2,403.80
$309.49
1948
2,297.20
1,148.60
136.42
1949
1,379.87
689.94
77.90
1950
1,112.10
556.05
75.03
1951
586.82
293.41
49.26
The issues are (1) whether petitioners understated their taxable income; (2) whether the additions to tax were properly imposed; and (3) whether assessment of the deficiency and additions to tax *77 for 1947 are barred by the statute of limitations. Findings of Fact The petitioners are husband and wife and reside at 1338 S. Markoe Street, Philadelphia, Pennsylvania. They filed their income tax returns for the taxable years with the then collector of internal revenue for the first district of Pennsylvania. The husband, Mack Scott, will be referred to hereinafter as the petitioner. The principal sources of income of the petitioners during the taxable years were from taprooms, rents, salary, and investments. The petitioner was born in Augusta, Georgia, about 1906 and moved to Philadelphia about 1920. The petitioners were married in 1925 and have a son, born in 1926, and a daughter, born in 1927. Petitioner's mother, Parris Mays Scott, moved from Augusta to Jersey City, New Jersey, between 1924 and 1926. Thereafter to 1946, when she died, she lived part of the time with petitioner in Philadelphia and the rest of the time with her two daughters in Jersey City. Petitioner's mother had no gainful occupation between 1939 and the time of her death. She did not file a gift tax return with either the then collector at Jersey City or Philadelphia in or after 1938. Petitioner attended *78 a trade school for about 3 years after he moved to Philadelphia. Thereafter, he operated a bootblack stand for about 4 1/2 years, served as a gate attendant and drove a truck. He was employed as a checker and watchman at a meat packing plant from 1932 until 1935, when he commenced to sell peanuts, cold drinks, etc., on "W.P.A." trains operated out of Philadelphia. After the "W.P.A." trains were discontinued, petitioner obtained a job as foreman of a department of a meat packing plant. He continued in that employment until 1939, when he entered the full time service of the County of Philadelphia as a process server in the sheriff's office during a night shift. The gross annual compensation of petitioner as an employee of the County of Philadelphia was $1,700 in 1940 and 1941, $1,900 in 1942, $2,100 in 1943, 1944 and 1945, and $2,300 in 1946. To obtain a deferment from military service, petitioner obtained employment as a tinsmith and machinist at the Kellett Aircraft Corporation for a few months in 1944 and 1945. Petitioner purchased a house at 1236 S. Markoe Street, Philadelphia, in August 1943, which he converted into 2 apartments during the next 8 months. He rented each of the *79 apartments for $40 to $48 per month. The apartments were vacant at times. Petitioner made no sales of real estate during the years 1940 to 1946, inclusive. Petitioners and their 2 children lived together continuously during the years 1940 to 1946, inclusive. During that period petitioner supported his wife and children; also his mother for about 8 months each year while she lived at his home. On June 27, 1940, petitioners purchased the premises at 1338 S. Markoe Street, Philadelphia, for $1,200, of which $200 was paid in cash and a mortgage was given for the remainder. Settlement charges of $117.52 were paid at that time. The mortgage was paid in full on January 9, 1943. During the years 1941 to 1945, inclusive, petitioner purchased United States savings bonds for the total amount of $768.75, of which bonds of a maturity value of $300 were redeemed in 1944. Petitioner had an interest at the close of 1944 in a license to operate a taproom at 3218 S. 84th Street, Philadelphia. In 1945 he purchased the retail liquor license for a taproom being operated at 3133 S. 84th Street, Philadelphia. The next year he acquired the premises at 3218 S. 84th Street for $6,000 in the "straw name" *80 of Michael C. Ryan. Two years later he moved his taproom business to that place. Petitioner opened a savings account with the Broad Street Trust Company, Philadelphia, on January 31, 1940. The account had a balance of $118.18, at the close of 1945 and $1,037.05 at the close of 1946. In 1944 petitioner opened a checking account with the Pennsylvania Company, Philadelphia, with an initial deposit of $433.88. Thereafter to the close of 1945 he made various deposits in the account, the largest of which was $1,569. Petitioner's wife opened a savings account with the Pennsylvania Company on May 29, 1936. Once a week or month petitioner rendered to a public accountant a statement purporting to show his business receipts and expenditures each day during the specified period of time. The accountant entered the figures so supplied by petitioner in a ledger without more than a verification of the totals to test the accuracy of the report. The returns of petitioner for the taxable years were prepared by the accountant from the records made by him from the data furnished by petitioner. When requested by a revenue agent to produce his books and records for use in connection with an examination *81 of his income tax liability for the taxable years, petitioner delivered some bank statements, cancelled checks, and a box containing bills. Later, petitioner was requested to supply the missing bank statements and cancelled checks and to deliver his books of original entry and other records. Except for several savings account books and a mortgage record, no additional records were supplied. Petitioner did not disclose prior to the hearing herein the records kept for him by the public accountant. The books and records kept by petitioners were inadequate for the determination of their income tax liability for the taxable years. In October 1944 petitioners purchased the premises at 7818 Laycock Avenue, Philadelphia, for $3,250, in connection with which they paid a total of $1,250 on or before settlement and executed a mortgage for the balance of $2,000. Promptly thereafter, Douglass Mitchell, a brother-in-law of petitioner in his employ at that time, moved into the premises as a tenant. Rent for the property was deducted from Mitchell's wages and used by petitioner to make payments on the mortgage. The rental income from the property was not reported in returns filed by petitioners *82 for the taxable years. Petitioners sold the Laycock Avenue property on May 17, 1950, to Mitchell and his wife for $3,250, of which the purchasers paid $750 in cash and executed a mortgage to a loan association for the balance. After payment of the amounts outstanding against the property, petitioners received at the time of settlement the amount of $1,064.50, without including the down payment of $750. Petitioner deposited the settlement check for $1,064.50 in his checking account with the Pennsylvania Company. Petitioner purchased the taproom business being operated at 1601 Ridge Avenue, Philadelphia, on April 15, 1947, for $14,500, of which he paid $9,500 in cash and the balance of $5,000 was paid by check drawn on his account with the Pennsylvania Company, which had a balance of $751.55 at the close of the previous day. On April 15, 1947, he made a deposit in the account which included a check from the Corn Exchange Bank & Trust Company, Philadelphia, in the amount of $5,000. In May 1951 petitioners received $5,451.26 as the proceeds of a mortgage placed on their properties at 1236 and 1338 S. Markoe Street in the amount of $6,000. They deposited the check in escrow with a *83 real estate firm for the purpose of leasing a hotel and when it was ascertained within a short time that the transaction could not be financed, the deposit was returned to petitioners in cash. The returns filed by petitioners for the taxable years were prepared by the accountant entirely from information furnished to him by petitioner. Petitioner, knowing that his mother died in 1946, instructed the accountant to claim her as a dependent in the return for 1947. Petitioner borrowed $2,000 from Louis Lalli in 1947. The final payment in the amount of $1,000 was made by petitioner in May 1951. Petitioner in 1948 made a down payment of $750 on the purchase of the premises located at 341 N. 62nd Street, Philadelphia. He forfeited the payment by his failure to complete the transaction. Petitioners spent $200 in 1947 in connection with the wedding of their daughter. The personal expenses of petitioners during the taxable years were as follows: Year
Expenses
1947
$5,054.89
1948
6,010.69
1949
5,947.45
1950
6,244.80
1951
5,524.98
The income tax return of petitioner for 1947 was filed on March 15, 1948. The notice of deficiency for that year was mailed on *84 June 5, 1953. The adjusted gross income reported by petitioners, and the amounts determined by the respondent by the net worth method, were as follows: Determined by
Year
Return
respondent
1947
$6,882.42
$19,849.52
1948
5,124.93
16,521.45
1949
1,206.22
9,069.20
1950
3,404.94
9,974.88
1951
4,651.68
7,662.98
The individual income tax returns filed by petitioner for 1947 and 1949 and the joint income tax returns filed by the petitioners for 1948, 1950 and 1951 were false and fraudulent with intent to evade tax. A part of the deficiency each taxable year was due to fraud with intent to evade tax. Opinion Petitioners contend under the issue of whether their income was understated in returns, that the records kept by the public accountant, from which the returns were prepared, clearly reflected net income and, accordingly, there was not justification for using the net worth method to compute their income tax liability. The only basis for the entries made by the public accountant was unsupported statements rendered to him by petitioner for receipts and expenses. No proof was made that petitioner ever made any effort to keep adequate basic *85 books and records for income tax purposes. Records, if any, kept by petitioner for the purpose of rendering the statements to his accountant were not produced at the hearing. The data supplied respondent's investigating agents was incomplete and, except for several savings account books and a mortgage record, nothing more was furnished upon demand. Clearly, no error was committed by respondent in resorting to the net worth method in determining the deficiencies. H. A. Hurley, 22 T.C. 1256, affd. 233 Fed. (2d) 177; Abraham Galant, 26 T.C. 354 (May 28, 1956). Petitioners admit the accuracy of the net worth statement with the exception of 4 items, consisting of cash on hand, the mortgage outstanding on the Laycock Avenue property, the loan payable to Louis Lalli, and living expenses. Cash on Hand The disagreement involves the amount of cash at the close of each year exclusive of bank balances, about which there is no controversy. The respondent allowed, and the petitioners claim, amounts as follows on December 31 of each year: Respondent
Year
Allowed
Petitioners Claim
1946
$3,500.00
$20,000.00
to $22,000.00
1947
None
$ 1,700.00
1948
None
1,700.00
1949
None
$1,200.00
1950
None
800.00
1951
$6,951.26
1,100.00
*86 The cash on hand claimed by petitioners in the opening statement is alleged to represent gifts of currency from petitioner's mother of about $4,000 in 1938, 1939 or 1940, and about $20,000 in 1945, and savings, all of which they assert were kept in a metal box under a bed at home. A finding that such a hoard of money existed is not justified by the evidence. Substantially all of the testimony on the alleged accumulation of currency was given by petitioner, an interested witness. A critical examination of his testimony disclosed its lack of probative value. Reference to some of our reasons for regarding petitioner's testimony as unworthy of belief will be sufficient. In May 1952 petitioner stated under oath to a revenue agent that his mother gave him money from time to time; that she gave him about $6,500 in 1938 and 1939; that the last lump-sum gift from her was in 1942 or 1943, and that the money was left to his mother by his father. Later, in February 1953, he executed an affidavit under oath that he received $20,000 in cash in 1940 from his mother, without asserting that he had received a prior gift from her or that he had an accumulation of savings in 1940. Petitioner testified *87 before us that in 1938 or 1939, while on a train enroute from Georgia to Philadelphia, his mother gave him a small package containing between $3,000 and $4,000 in currency, no bill of which was over $20, and that in 1944, 1945 or 1946 she gave to him in Jersey City a shoe box containing about $20,000 in currency, no bill over $20. Petitioner testified that all of the members of his family were aware that the alleged money was in a box under his bed at home, yet only his wife offered testimony on the point. Petitioners' daughter appeared as a witness but was not questioned on the presence of the box containing the money. Their son was not called to testify and there is no showing that he was unavailable to corroborate their testimony. Petitioners' failure to question their daughter and call their son creates an inference that their testimony would have been unfavorable. Stoumen v. Commissioner, 208 Fed. (2d) 903. The indefiniteness and conflicts in the testimony as to the time of the alleged gifts, considering their isolated nature, the identity of the person from whom his mother allegedly received the money, and the ability of petitioner to recall the details, including *88 time, of less important events, demonstrate the unlikelihood that the transactions ever occurred. If we were able to find that gifts had been made to petitioner by his mother, as alleged, the amounts could not be found from the evidence. Petitioner's testimony discloses that he examined the package and box of money sufficiently to ascertain the denominations of the currency. Concerning the alleged second gift, he testified that he did not ask his mother and she did not tell him the amount of currency in the box and that he never counted all of it, but that he knew how much he had spent from it. It seems to us that curiosity alone would have caused him to ascertain the amount of the gifts, if they had been made, as alleged. Finally, petitioner testified that he kept the alleged money at home because of his distrust of banks. There was no such lack of confidence in banks. He had a savings account in a banking institution in and after 1940 and a checking account in another bank in and after 1944. Petitioners have failed to establish that they had an accumulation of cash as of the close of 1946 in excess of the amount allowed by respondent. Allowance of amounts of cash on hand *89 at the close of the next four years, as claimed by petitioners, would increase net worth and taxable income. The respondent is not asking us to make the adjustments, and, under the circumstances none will be made. The evidence does not disclose the manner in which respondent arrived at the figure of $6,951.56 for cash on hand at the close of 1951. The amount indicates that it consists of the net proceeds of $5,451.26 of the mortgage placed on the S. Markoe Street properties in May of that year, and $1,500 of other funds. The money so borrowed is offset by a credit in the net worth statement for the balance due on the mortgage. In any event, petitioners' burden was to overcome the presumptive correctness of respondent's determination. Petitioners, on brief, are contending for an allowance not in excess of what petitioner had left from the mortgage loan at the close of the year, which he testified was from $1,100 to $1,200. His testimony is not only nothing more than an estimate, but its unreliability as proof appears from other testimony. Petitioner testified that he borrowed the money to pay debts that had accumulated over a period of years, and that he used the funds to pay *90 "some back bills". Other evidence, which we regard as more reliable, is to the contrary. The check for the net proceeds of the mortgage was promptly endorsed by petitioners and delivered to a real estate firm in escrow for the express purpose of leasing a hotel and, when it was found that a lease could not be negotiated, the deposit was returned to petitioner in cash. Petitioner made no effort to explain his testimony to the contrary and no reason was given for using cash to return the deposit. Accordingly, the determinations made by the respondent in the net worth statement for cash on hand will not be disturbed. Mortgage, Laycock Avenue property Petitioners stipulated that respondent correctly included this property in the net worth statement as an asset in the amount of $3,250 but denied that the unpaid balance of the outstanding mortgage each year was in the amount determined by him. Notwithstanding agreement that the property was part of their assets each year until 1951, petitioners endeavored to prove that they held title as "straw men" for Mitchell. We have found from the evidence that petitioners were the actual owners and that Mitchell was their lessee of the property *91 until it was sold to him and his wife on May 17, 1950. Respondent indirectly concedes on brief that the sale occurred in 1950 and, consequently, the property did not constitute an asset of petitioner after the close of 1949 for inclusion in the net worth statement. Petitioners relied solely upon their contention that they held title for Mitchell and made no proof that the amount included in the net worth statement each year as a liability under the outstanding mortgage was not correct. Accordingly, except for eliminating the property and the mortgage from the statement for the year 1950, respondent's determination is sustained. Loan payable - Louis Lalli Respondent determined that petitioner had no indebtedness to Louis Lalli at the close of any year except 1951, when he found that the amount was $500. The finding on the debt in 1951 appears to have been based upon a statement made by petitioner to one of the respondent's investigating agents. The evidence on the issue is not only indefinite in many respects but the contentions of the parties on brief are far from clear. Petitioner requested a finding that the unpaid balance of the debt at the close of 1947 was about $2,000 *92 and that he reduced the amount from time to time thereafter by payments until some unspecified time in 1951 when the final payment was made. Only testimony of petitioner is relied upon for the requested finding. His testimony was based entirely upon recollection and we do not regard it as sufficiently reliable for the finding of any fact on the question. Except for the requested finding, petitioner did not discuss the issue on brief. Other than a request that we disregard petitioner's testimony under the issue, respondent does not discuss the question on brief. Respondent's request for findings of fact eliminates the indebtedness as a liability of petitioner at the close of 1951. That indirect concession of error conforms with our finding from the testimony of petitioner's creditor that the balance on the debt was paid in full in May 1951. Other testimony of Lalli is that the loan in the amount of $2,000 was made in 1947 and that he did not know the amount owing at the end of any subsequent year before final payment. Obviously, if $1,000 was paid in 1951 at least that amount was owing at the close of 1950. Accordingly, the net worth statement should reflect the liability of $1,000 *93 to Lalli at the close of 1950 and nothing owed on December 31, 1951. Living expenses Respondent determined these expenses as follows: Year
Amount
1947
$6,290.25
1948
6,061.93
1949
5,667.52
1950
6,777.29
1951
6,716.87
On brief petitioners assert "* * * that an average of about $4000 per year would be as close as could be determined." The amounts for substantially all of the items of expense have been stipulated. With the exception of 1947, the total amount agreed upon for each year is in excess of $4,000, and more than $5,000 with the inclusion of $1,040 each year for food, based upon testimony of petitioners. Other amounts included in the total amount found by us for each year have the support of documentary evidence, which petitioners are not questioning. The remaining items require special treatment. Telephone charges The amounts actually paid were stipulated. Petitioners contended at the hearing that the charges for the serivce were partially offset each year by amounts deposited by neighbors and others in a box when they used the telephone to make calls. There is evidence to the effect that outsiders did make such deposits. Whether the amounts *94 were paid as a charge by petitioners for use of the phone or donated does not appear. No proof was made of the amount allegedly deposited in the box and the evidence contains no basis for an estimate, assuming that petitioners charged for the use of the phone. Accordingly, there is no ground for reducing the amounts for this item of expense. $750Forfeiture, 341 N. 62nd Street The difference between the parties on this item is whether the money lost in the transaction belong to petitioner. Petitioner testified, in substance, that he was acting as a "staw man" for William Waters, and that the money he used came out of funds deposited in his checking account for Waters. His testimony on the ownership of the money is not supported by other evidence. Without corroboration, it is not, in our opinion, sufficiently reliable for acceptance. Absent proof that the expenditure was not made by petitioner, respondent is sustained. Wedding Respondent included the amount of $500 in living expenses for 1947 as the cost of the wedding of his daughter and a reception. We have reduced the expense to $200 based upon testimony, regarded as reliable, that some of the expenses were paid out of donations *95 from employees of the sheriff's office and others. In all other respects the determinations made by respondent for living expenses are sustained. Additions to tax, Sec. 293(b) We have concluded from a consideration of all of the evidence that respondent sustained his burden by clear and convincing evidence that the return filed each year was false and fraudulent with intent to evade tax; also that a part of the deficiency each year was due to fraud with intent to evade tax. Reference to some of the proof made will be sufficient. There was a failure to keep books and records to properly reflect petitioner's income in spite of knowledge that such accounts were required by statute. Such records as were kept by the public accountant were obviously designed to conceal rather than reflect his actual income and were not disclosed by petitioner when called upon to do so by the investigating agents. He included in such records only such income as he wished to return for taxation. The extent of his omissions of income is shown by his continuous substantial understatements of taxable income. Much of petitioner's testimony was not only evasive, but indefinite and contradictory without *96 justification. Other of his testimony was given with knowledge of its falsity. In addition, his contentious attitude at the hearing disclosed a purpose to conceal relevant facts that might be used against him. Additions to tax, Sec. 294(d)(2) Although these additions to tax were made an issue in their petition, petitioners on brief do not refer to it as a question pending before us. The addition to tax is mandatory under the statute in the event the estimate in their declaration of tax for each year was less than 80 per cent of their actual income tax. H. R. Smith, 20 T.C. 663. The amount of the addition each year will be determined in the Rule 50 computation. Statute of limitations Inasmuch as the return filed for 1947 was false and fraudulent with intent to evade tax, assessment of the deficiency and additions to tax for that year are not barred by the statute of limitations. Sec. 276(a), I.R.C. of 1939. Decision will be entered under Rule 50.