ESTATE OF CLYDE ROGERS, DECEASED, EARLENE ROGERS, ADMINISTRATRIX, and EARLENE ROGERS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Rogers v. Commissioner
Docket No. 5770-74.
United States Tax Court
T.C. Memo 1979-178; 1979 Tax Ct. Memo LEXIS 348; 38 T.C.M. (CCH) 749; T.C.M. (RIA) 79178; May 8, 1979, Filed *348 Howard W. Muchnick, for the petitioners. Robert N. Armen, Jr., for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined a $30,823.98 deficiency in petitioners' income tax for 1970, plus additions to the tax of $1,541.19 for late filing of petitioners' 1970 return and $1,541.19 for negligence. Petitioners do not dispute the amount of the deficiency or the additions to the tax. The sole issue is whether petitioner Earlene Rogers is entitled to be relieved of liability for payment of the deficiency and the additions to the tax under the "innocent spouse" provisions of section 6013(e). [1]
FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Earlene Rogers ("Earlene") was a resident of Cleveland Heights, Ohio, when the petition was filed. Earlene filed a joint return for 1970 with her husband Clyde Rogers ("Clyde"), now deceased, and she is administratrix of Clyde's estate. Clyde and Earlene were married in 1962. During the year in issue, Clyde owned and operated two small retail grocery stores in Cleveland. *349 Clyde also owned and operated a notary and tax service and a juke-box and pinball machine rental company. Between 1966 and 1968 Clyde and Earlene acquired two parcels of real estate consisting of (1) a brick commercial building which housed one of Clyde's grocery stores and two rental suites and (2) a residential building containing six rental apartments. Title to the properties was held in the joint names of Clyde and Earlene Rogers. During 1970 Clyde, Earlene and their two children resided in one of the apartments. In 1968 Clyde individually acquired a single family dwelling. This building was rented for part of the year in issue. In 1969 Clyde individually acquired a commercial building which was used throughout 1970 to house his other retail grocery store. In 1970 Clyde acquired individually an unimproved lot for $9,000. On June 16, 1970, Earlene acquired for $2,900 a 1970 Ford automobile, title to which was solely in her name. As of December 31, 1970, the automobile was unencumbered. Throughout 1970 Clyde and Earlene maintained a joint checking account. This was the only bank account they maintained during the year in issue. Earlene often discussed the couple's financial *350 matters with Clyde. Neither Clyde nor Earlene received any gifts or inheritances during 1970. Earlene did not maintain regular fulltime employment in 1970. She did, however, occasionally work at one of Clyde's grocery stores when a regular employee failed to appear for work. Also, she occasionally collected rent from occupants of the couple's jointly-owned rental properties. On September 21, 1971, Clyde and Earlene jointly purchased a single family residence at 1345 Forest Hills Boulevard in Cleveland Heights for $47,500, making a $14,850 down payment. In 1973 Clyde and Earlene were in the process of obtaining a divorce when Clyde died. After Clyde's death, Earlene received $4,000 and the children received approximately $25,000 from Clyde's estate. By 1975 the probate of Clyde's estate was still incomplete. During 1973 and 1974 Earlene earned income from the operation of an escort service. She also worked occasionally as a typist, and at one time took care of an older woman. At the time of trial, Earlene and her two children lived in the Forest Hills Boulevard home. On their 1970 return, Clyde and Earlene reported $76,670 gross receipts from the grocery store business and *351 rentals plus $1,000 income from Clyde's notary and tax service. They claimed the following costs of goods sold and business deductions: Cost of goods sold
$ 50,616.00
Depreciation
10,767.00
Miscellaneous other deductions
30,528.36
$ 91,911.36
Adjusted gross income reported on the return was minus $14,241.36 ($77,670 business and rental income minus costs of sales and business deductions of $91,911.36). The remainder of Form 1040 for 1970 consists of zeros in the columns for the amount of tax, credits, total tax withheld, 1970 estimated tax payments, and overpayments. Both Clyde and Earlene signed the return, which was prepared by an income tax return preparer. Clyde and Earlene filed a joint income tax return for 1971 on which they reported adjusted gross income of $13,487.17. Using the net worth method for reconstructing income, respondent determined that Clyde and Earlene understated their adjusted gross income for 1970 by $91,063.36 as follows: Assets
1/1/70
12/31/70
Cash in bank $ 270.00 $ 231.00
Inventory
3,200.00
29,600.00
Automobile
0
2,900.00
Business depreciable assets
0
24,900.00
Real estate
125,200.00
134,200.00
$128,670.00
$191,831.00
Liabilities
Notes and mortgages payable [2]
$ 72,518.00
$ 62,169.00
Reserve for depreciation [3]
0
4,688.00
$ 72,518.00
$ 66,857.00
Balance
$ 56,152.00
$124,974.00
Balance, 1/1/70
56,152.00
Increase in net worth
$ 68,822.00
Add: Personal living expenses
8,000.00
Economic income
$ 76,822.00
Statutory adjustments for adjusted gross income
0
Adjusted gross income as corrected
$ 76,822.00
Add: Negative adjusted gross income as reported
14,241.36
Understatement of adjusted gross income
$ 91,063.36
*352 The deficiency notice was computed on this basis. OPINION The sole issue for decision is whether petitioner Earlene Rogers ("Earlene"), in her individual capacity, is an innocent spouse entitled to relief from payment of the deficiency and additions to the tax under section 6013(e). Respondent contends that Earlene does not qualify for relief as an "innocent spouse" because she cannot satisfy the requirements of section 6013(e). Under section 6013(e) a wife [or husband] is relieved from liability for the deficiencies resulting from omitted gross income on a joint return filed with her husband if three prerequisites are met: (1) on the joint return filed for the taxable year there was erroneously omitted gross income attributable to her husband which is in excess of 25 percent of the amount of gross income stated in the return; (2) in filing the return she did not know of and *353 had no reason to know of such omission; and (3) after taking into account all the facts and circumstances, including the significant benefit she received from the omitted income, it is inequitable to hold her liable. The spouse seeking relief from liability under section 6013(e) carries the burden of proof and must establish that all three requirements are satisfied. Adams v. Commissioner,60 T.C. 300, 303 (1973). In this case, respondent contends that none of these requirements have been satisfied, and we agree. Respondent contends, first, that the 25 percent omission from gross income requirement under section 6013(e)(1)(A) is not satisfied. On their 1970 return Clyde and Earlene Rogers reported $76,670 gross receipts from rentals and the grocery store business plus $1,000 income from Clyde's notary and tax service, and an adjusted gross income of minus $14,241.36. Using the net worth method, respondent determined that Clyde and Earlene understated their 1970 adjusted gross income by $91,063.36. This determination is not disputed. Section 6013(e)(2)(B) provides that the amount omitted from gross income is determined with reference to section 6501(e)(1)(A). For such purposes, *354 in the case of a trade or business, the term "gross income" means amounts received from the sale of goods prior to diminution for the cost of such sales. Section 6501(e)(1)(A)(i).Omission of gross income is not equivalent to the understatement of adjusted gross income or net income; such income can be understated, for example, due to excessive deductions. Hurley v. Commissioner,22 T.C. 1256, 1264-1265 (1954), affd. 233 F. 2d 177 (6th Cir. 1956). In this case we know that adjusted gross income was understated by $91,063.36. However, the amount of omitted gross income is not readily ascertainable. In order to equate the unreported adjusted gross income figure as determined by respondent to omitted gross income, Earlene must show that the unreported adjusted gross income does not result from excessive deductions or overstated cost of goods sold. Resnick v. Commissioner,63 T.C. 524, 527 (1975); Hurley v. Commissioner,supra at 1265. Total deductions and cost of sales stated on the return were $91,911.36 of which $4,688.00, representing depreciation, was allowed by respondent as a deduction.Earlene has failed to prove that the remaining $87,223.36 claimed deductions and costs of *355 sales were not excessive. When the amount of unreported adjusted gross income ($91,063.36) is reduced by the total amount of excessive deductions taken on the return ($87,223.36), the result is $3,840. This figure represents the amount of unreported income which is known to result from items of omitted gross income. See Courtney v. Commissioner,28 T.C. 658, 669 (1957); Micciche v. Commissioner,25 T.C.M. 710, 35 P-H Memo. T.C. par. 66,138 (1966). Because $3,840 is not in excess of 25 percent of the gross income stated in the return, [4] the 25 percent omission from gross income requirement is not satisfied. In addition, Earlene has not demonstrated that the omissions are attributable solely to Clyde. During 1970 Earlene occasionally worked in one of Clyde's grocery stores and collected rentals. She also received rental income from properties held jointly with Clyde. Earlene has failed to prove that the omitted income was not, in part, attributable to her efforts or investments. Respondent contends, second, that Earlene failed to establish that in signing the return she did not know *356 of and had no reason to know of the omission. Earlene signed the 1970 joint return which displayed an adjusted gross income figure of minus $14,241.36. However, during 1970 the couple's net worth increased $68,822, and they expended $8,000 for personal living. In addition, in the summer of 1970 Earlene acquired a $2,900 automobile which was unencumbered at the end of the year. The only bank account maintained by either Clyde or Earlene throughout 1970 was a joint checking account. We have no reason to believe that Earlene did not have full access to this account. Although Earlene may not have asked Clyde about the specifics of the couple's financial affairs, Clyde and Earlene did discuss their financial matters. In addition, there is no showing that the books and records for the couple's business ventures were not available to Earlene. See Adams v. Commissioner,60 T.C. 300, 303 (1973). On the basis of these facts, we conclude that Earlene knew that the income reflected in Clyde and Earlene's 1970 joint return was understated. The only direct evidence of Earlene's lack of such knowledge is her assertion to that effect. However, we find her entire testimony conflicting, unworthy *357 of belief, and unsupported by the factual record. [5]
Third, respondent contends that Earlene failed to prove that she did not significantly benefit, directly or indirectly, from the items omitted from gross income. Earlene, however, asserts that she did not receive any significant benefit. We find her testimony unsupported by the facts. On June 16, 1970, Earlene acquired a 1970 Ford automobile for $2,900. As of December 31, 1970 the automobile was unencumbered. During 1970 improvements were made to real estate owned jointly by Clyde and Earlene. In addition, the mortgage balances on the rental units held by Clyde and Earlene decreased by approximately $7,000 resulting in a decrease in Earlene's personal liability on these notes. Moreover, *358 Earlene received a benefit from this understatement of income in subsequent years. Under section 1.6013-5(b), Income Tax Regs., benefit may consist of transfers received subsequent to the year in which the omitted item of gross income should have been included. In this case, Clyde and Earlene acquired a single family residence in 1971 for $47,500 with a down payment of $14,850. Initially, Earlene maintained that Clyde had no property interest in this parcel and that the down payment was made with funds given to her by her father. She later admitted at trial, however, that she had lied and that she did not know the source of the down payment. The amount of the down payment exceeded Clyde's and Earlene's 1971 reported adjusted gross income. Earlene did not offer any evidence to show that the funds were from sources other than the 1970 omitted income. In light of the above facts, we conclude that Earlene received significant benefit, both directly and indirectly, from the items omitted from gross income in 1970. Earlene contends, nonetheless, that it would be inequitable to hold her liable for this deficiency. Section 6013(e)(1)(C) provides, notwithstanding that a spouse received *359 significant benefit from the omitted items, that if all the other facts and circumstances of the case make the imposition of the tax inequitable, the spouse may be relieved of liability. The facts here, however, do not support Earlene's claim that imposition of the tax would be inequitable. After Clyde died, the children received approximately $25,000 and Earlene received $4,000 from Clyde's estate. The probate of the estate had not been completed at the time of trial, so we do not know what additional assets Earlene might receive. Although a widow, Earlene is not without financial resources. During 1973 and 1974 she derived income from the operation of an escort service. She also worked as a typist and took care of an older woman. At the time of the proceedings before this Court, Earlene and the children still resided in the house on Forest Hills Boulevard. In light of the above facts, we believe that it would be neither harsh nor inequitable to decline to relieve Earlene of her statutory duty. Compare Dakil v. United States,496 F. 2d 431, 433 (10th Cir. 1974). Accordingly, Decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect during the year in issue.↩
2. There was approximately a $7,000 decrease of the mortgage balance on property held jointly by Clyde and Earlene. The remaining mortgage balance reduction is attributable to reduction of Clyde's individual liabilities. ↩
3. Respondent allowed $4,688 of the $10,767 depreciation deduction claimed by petitioners.↩
4. Gross income stated in the return is $77,670. Twenty-five percent of this amount is $19,417.50.↩
5. At trial respondent's counsel offered Exhibits U and V solely for purposes of impeachment of petitioner Earlene Rogers' testimony under Rule 609, Federal Rules of Evidence.↩ We sustained petitioner's objections to the admissibility of these documents, but permitted respondent to argue for their admissibility on brief. Since we do not find the testimony given by Earlene at trial credible, we need not reconsider the admissibility of these documents.